HARRY W. JONES *et al. vs.* STEPHEN N. BLISS *et al.*

Argued Dec. 11, 1891. Decided Feb. 3, 1892.

Estoppel by Conduct.—Where a married woman, by the direction and sanction of her husband, and acting under a power of attorney, attempted to make a sale and conveyance of his land—an improved farm—for a consideration paid, and executed a deed therefor under such power, the deed is invalid on account of the wife's disability; but if the consideration is accepted and retained by him, and the possession delivered and accepted by the purchaser with his consent, as upon an executed contract of sale, and in pursuance thereof, and he, with knowledge of the facts, has acquiesced in the transaction and the possession of the purchaser and his assignee for many years, he will be estopped to deny that the latter is the equitable owner in rightful possession of the premises.

Appeal by plaintiffs, Harry W. Jones, Sarah M. Carter, and Rebecca J. Dean, from the judgment of the district court of Scott county, *Cadwell,* J., entered September 17, 1891, in favor of Stephen N. Bliss and Margaret R., his wife.

The plaintiffs are the children and heirs at law of Enos Jones, who died intestate June 18, 1889, in Oregon. On May 3, 1869, he was the owner of 120 acres of land in Scott county, Minn., and on that day he mortgaged it to John G. Bass to secure the payment of $450, and interest. His wife did not join in or execute this mortgage. Bass assigned the mortgage to John S. Norman, who foreclosed it on December 30, 1870, and on the sale bid in the premises for the amount due, with interest and costs, ($555.21.) Enos Jones then resided in Kansas, and on August 15, 1871, made a power of attorney there, to his wife, Sevina Jones, authorizing her to sell and convey this land for him. This power was void. Laws 1869, ch. 56, § 4. It was recorded, however, and she, purporting to act under it, sold and conveyed the land, December 20, 1871, in his name to David Brown, for $1,500. Brown took possession of the land, and redeemed from the foreclosure sale, and took the sheriff's certificate of redemption, and had it recorded December 22, 1871. The sheriff paid over the redemption money to Bass, who

was the agent of Norman to receive it. Norman received the money, or most of it, from Bass, and on January 4, 1872, he and wife executed and delivered to Bass a quitclaim deed of the land. Bass made no claim to the land under this deed, and never had it recorded. On September 22, 1875, Brown and wife conveyed the land to defendant Stephen N. Bliss, who has ever since been in possession and paid the taxes thereon. Soon after Mrs. Jones sold the land she went to her husband, and lived with him until she died, March 12, 1873. After her death Enos Jones made two visits to this state, while Bliss was in possession cultivating the land, and stayed two weeks within a mile of it, but made no claim to it. After the death of Enos Jones his heirs, the plaintiffs, got Bass and wife to quitclaim the land to them without consideration.

This action was commenced prior to January 1, 1891, and was tried June 16, 1891, by the court without a jury. Findings were made that Enos Jones fully ratified the sale made by his wife, and that plaintiffs were estopped from claiming the land by the acts and conduct of their ancestor. Judgment was entered September 17, 1891, for defendants.

*H. H. Dean, P. J. McLaughlin,* and *R. A. & F. C. Irwin,* for appellants.

At the time the mortgage to Bass was given, Jones and his wife were in possession of the land and living on it. The mortgage was not signed by the wife, and was void as to the homestead. *Barton v. Drake,* 21 Minn. 299; *Conway* v. *Elgin,* 38 Minn. 469.

The power of attorney from Enos Jones to his wife, Sevina Jones, was absolutely void under the statute. Laws 1869, ch. 56, § 4; 1878 G. S. ch. 69, § 4; *Sanford* v. *Johnson,* 24 Minn. 172; *Fall* v. *Moore,* 45 Minn. 515.

The power of attorney from Jones to his wife, and the deed thereunder to David Brown, being absolutely void and incapable of ratification, no title passed thereunder to Brown, and Brown, having no title, could pass none to Bliss under his deed. Brown had no right to redeem from the mortgage sale, he not being the owner or having a subsequent lien. Enos Jones did not ratify the sale by any act of his, as the same was incapable of ratification by any act

except the making of a new deed. The title to the land in controversy was in Enos Jones at the time of his death, and vested in these plaintiffs as his heirs at law. *Law* v. *Butler*, 44 Minn. 482.

*Southworth & Coller* and *Williams, Goodenow & Stanton*, for respondents.

This is a suit in equity brought to quiet the title to 120 acres of land. Plaintiffs demand that they be adjudged and decreed the owners of an estate in fee simple in the real estate. They also ask for possession of the property, and damages for the detention thereof, and for such other and further relief as may be just and according to equity.

Nothing can call a court of equity into activity but conscience, good faith, and reasonable diligence. Where these are wanting, the court is passive, and does nothing. 2 Story, Eq. Jur. § 1520; *Knox* v. *Randall*, 24 Minn. 479, 499; *O'Mulcahey* v. *Gragg*, 45 Minn. 112; *Bausman* v. *Kelley*, 38 Minn. 197, 210; *Sanborn* v. *Eads*, Id. 211; *Clague* v. *Washburn*, 42 Minn. 371.

VANDERBURGH, J. The plaintiffs, heirs at law of Enos Jones, deceased, ask to have the title of the land in question here, and claimed by defendant, adjudged to be in them. It appears from the pleadings and findings that Enos Jones was the patentee of the premises, and was in the actual possession thereof up to the date of the deed to one David Brown, mentioned in the record. The court, however, does not find, and the evidence is not such as to require a finding, that the land, or any part of it, was the family homestead or occupied as such by Jones. At the date of the deed he had gone to Kansas to live, and had previously given his wife a power of attorney under seal to sell the land. She thereafter, on the 20th day of December, 1871, bargained with Brown to sell the same to him for the sum of $1,500. actually paid, and thereupon executed a deed thereof to him in the name of her husband under the power, she joining therein. The court finds that Brown thereupon took possession, and remained in the actual possession thereof until he sold and conveyed the same to the defendant Bliss, on the 22d day of September, 1875, who purchased in good faith, and has since been in the open and notorious occupation and possession. Mrs. Jones in fact surrendered the pos-

session of the land to Brown for her husband under the sale, and received the purchase money for him, and afterwards went to Kansas to reside with her husband, where she died in March, 1873. The findings in respect to the delivery of the possession to Brown upon the sale, and the actual possession of the latter, the land being an improved farm, are justified by the evidence, as well, also, as the further facts found, that the possession of both Brown and Bliss was with the knowledge of Jones. Jones never returned to Minnesota to reside, though he visited in the vicinity, and never made any claim to the land after the sale to Brown, but had evidently abandoned all claim to it. He died in Oregon in 1889.

The plaintiffs claim that the title never passed, owing to the invalidity of the deed under the unauthorized power of attorney to Mrs. Jones, and hence the land descended to them as his heirs. They also claim title under the mortgage foreclosure set up in the pleadings. The mortgage was given in 1869 by Jones to one Bass, by him assigned to one John S. Norman, who foreclosed the same, and sold and bid off the premises on the 30th day of December, 1870. On the 22d day of December, 1871, David Brown, after his alleged purchase, paid to the sheriff the amount of the purchaser's bid, with interest, ($594,) in full for the redemption of the premises, and received the sheriff's certificate of redemption in due form, which, among other things, recited that David Brown claimed to be the owner of the land, and had produced the evidence required by law showing his right to redeem the premises from the sale. The certificate was duly recorded the same day, and the redemption money paid over to Norman, who had notice of the redemption through his agent, Bass, who was present and witnessed the certificate. Norman actually received the greater part of the redemption money, which was sent to him by his agent, and afterwards of his own motion executed a quitclaim deed of the land to the latter, bearing date January 4, 1872, without any consideration money from Bass. The latter, however, made no claim under the deed, and it was never recorded until the year 1890, when it was delivered to the agent of the plaintiffs at their request, together with a quitclaim from him, without consideration, and with notice that he had no title.

Brown's relations to the land and the parties were such that he cannot be held to be a mere volunteer or intermeddler in making the redemption. He undoubtedly acted in good faith, and with the acquiescence of Jones, who evidently did not intend to redeem. The receipt of the money by Norman made the redemption operative and effectual between the parties, and no one else was prejudiced or can question it. The result was, on the face of the record, to cancel the sale, just as payment by Brown, under like circumstances, would have operated to cancel the mortgage if it had not been foreclosed. The plaintiffs acquired no title under the deed from Norman.

Since Brown, the defendant's grantor, to whose rights the latter has succeeded, paid the purchase price, and also redeemed the land, in reliance upon the supposed right of Mrs. Jones to sell the same, and entered into possession in good faith under the sale, it is evident that Jones, who knew the state of the title, and must have been informed of the transaction, was bound in equity and good conscience to repudiate it within a reasonable time, or he should be held to have adopted her acts in the premises, in so far as it could be done without writing. Mechem, Ag. § 146. He could not make the deed good without writing, but he could adopt and make his own the rest of the transaction. *Sanford* v. *Johnson*, 24 Minn. 173. He should be treated as having received the purchase price, and as having delivered the possession to Brown, as purchaser, in consideration thereof. The transaction ought to be considered, in substance, as if it were a parol contract of sale executed by the delivery of possession, and defendant should be adjudged to be the equitable owner, and the bare legal title left in Jones. *Sennett* v. *Shehan*, 27 Minn. 328, (7 N. W. Rep. 266.) Jones' consent to the possession must be presumed. 53 Amer. Dec. 541. According to the recital in the deed of the plaintiffs procured by them from Bass, Jones attempted to sell the land "through his wife under the power." And so undoubtedly he did; that is to say, in view of his subsequent acquiescence, the intention of the parties will be held to have been carried out, and the sale consummated, as far as it could be without deed. The deed was invalid, not because it was illegal, but because of the wife's incapacity. But this did not prevent

him from accepting, adopting, and acting upon what she had done. The title did not pass, but upon the facts found there is sufficient in the conduct of Jones to estop him from denying that the defendant is the equitable owner of the premises. Other equities in behalf of the defendant are suggested. In *Blodgett* v. *Hitt*, 29 Wis. 169, 187, supported by abundant authority, the court refused to interfere in behalf of the holder of the legal title against a *bona fide* purchaser in possession under a defective title, who as a part of the consideration of his purchase had satisfied debts and incumbrances against the estate purchased, except upon condition of reimbursement of the consideration paid. So it may be, under the doctrine of *Crippen* v. *Chappel*, 35 Kan. 499, (11 Pac. Rep. 453,) and other cases, Brown might claim to have been subrogated to the rights of Norman by virtue of the redemption. But it is unnecessary to enter upon the discussion of that branch of the case. We are satisfied to rest our decision upon the ground stated, which was the one upon which the trial court based its decision, and we think properly, as it gives effect to the actual intention of the parties, and does justice to all.

Judgment affirmed.

(Opinion published 51 N. W. Rep. 375.)