HENRY H. SMITH and Another v. HENRY H. FLETCHER.

January 5, 1899.

Nos. 11,474—(199).

### Mortgage—Authority to Accept Payment—Ratification—Evidence.

The issues in this case were whether K. had original authority, as agent of the defendant, to receive and accept payment of a certain mortgage, and, if not, whether the defendant had subsequently ratified K.'s act. *Held*, that upon the evidence the trial court was justified in finding both issues in the negative.

### Ratification by Inaction—Estoppel.

Implied ratification by mere silence or inaction, after knowledge of the unauthorized act of an assumed agent, proceeds upon the doctrine of equitable estoppel.

### Same—Evidence—Effect on Third Persons.

Mere silence or nonaction, after knowledge, is evidence of ratification, but is not conclusive, except when the protection of the assumed agent or of third parties requires it; that is, where the facts are such that the law will presume that the agent or a third party would be prejudiced by the delay to speak or act, if the principal should thereafter be permitted to assert that he had not authorized or ratified the act.

New Trial—Evidence of Act Subsequent to Trial.

> Held, also, that, upon the facts, the trial court did not err in refusing to grant a new trial for the purpose of giving the plaintiffs an opportunity to introduce evidence of an act of the defendant tending to prove ratification, committed 13 months after this action had been tried and decided.

Action in the district court for Hennepin county to enjoin the foreclosure of a mortgage and obtain a decree that the same had been paid and satisfied. Defendant prayed for the foreclosure of the mortgage. The cause was tried before McGee, J., without a jury, who ordered judgment in favor of defendant for $400 and interest, and for a foreclosure of the mortgage. From an order denying a motion for a new trial, plaintiffs appealed. Affirmed.

*John M. Rees*, for appellants.

When the principal is informed of what has been done by the agent, if the principal disapprove he must dissent and give notice of it in a reasonable time, and if he does not do so, his assent and ratification will be presumed. 2 Kent, Com. 216. From the unauthorized act of an agent done in execution of the power granted, but in a mode not sanctioned and in excess and misuse of it, ratification is implied, and it is the imperative duty of the party to disaffirm it at once; otherwise he is bound by it. Myers v. Mutual, 32 Hun, 321; Law v. Cross, 1 Black (U. S.) 533. If the rights of third parties depend upon the principal's election, he is bound to repudiate or disaffirm the acts of the agent within a reasonable time after knowledge thereof; and if he does not so dissent, his silence will afford conclusive evidence of his approval. Triggs v. Jones, 46 Minn. 277. See also 1 Am. & Eng. Enc. (2d Ed.) 1198; Bearce v. Bowker, 115 Mass. 129; McWhinne v. Martin, 77 Wis. 182; Hoosac v. Donat, 10 Colo. 529; Perkins v. Boothby, 71 Me. 91; Benson v. Liggett, 78 Ind. 452.

One who knowingly allows another to collect for him, is bound by payments made to the other. 1 Am. & Eng. Enc. (2d Ed.) 960; Sax v. Drake, 69 Iowa, 760; Quinn v. Dresbach, 75 Cal. 159; Simon v. Brown, 38 Mich. 552. See also Friesenhahn v. Bushnell, 47 Minn. 443; Neibles v. Minneapolis & St. L. Ry. Co., 37 Minn. 151; Tice v.

Russell, 43 Minn. 66; Fowlds v. Evans, 52 Minn. 551; Wilcox v. Chicago, M. & St. P. Ry. Co., 24 Minn. 269; Hare v. Bailey, 73 Minn. 409.

*Hahn, Belden & Hawley,* for respondent.

A general authority to collect would not authorize this collection. See Smith v. Kidd, 68 N. Y. 130; Mechem, Ag. § 380. The acts claimed to effect a ratification must be of such a nature that the rights of the other party who has relied upon them will be prejudiced if a ratification has not taken place. Mechem, Ag. §§ 131, 155, 156, 157.

MITCHELL, J.

This is still another of the "Kelley Cases." The plaintiffs, on January 16, 1896, paid to A. F. & L. E. Kelley the sum of $300, to apply on the principal of a note, secured by a mortgage, given by them to defendant. This was more than a year before the money became due, according to the terms of the mortgage as extended. Neither the note nor the mortgage were in the possession of the Kelleys, but were in the possession of the defendant, in Vermont, where they had always remained after they were transmitted to him, in 1889, soon after their execution.

The Kelleys never paid or accounted for the money to the defendant; and the principal question on this appeal is whether the evidence justified the trial court in finding that,

"Neither A. F. & L. E. Kelley, nor either of the members of the firm, were ever the agents of the defendant to receive or to collect, or were ever authorized by him to receive or collect, any part of the principal of said note."

As we have arrived at the conclusion that the finding was justified, we shall not attempt to discuss the evidence at length. It is sufficient to state generally that there was no evidence which required, even if it would have justified, a finding that the defendant had ever clothed the Kelleys with either actual or apparent authority to collect the money on his mortgage loans, except where he had transmitted to them the principal or coupon notes for the purpose of collection.

Much stress is laid by counsel upon the instructions given to the Kelleys, and the knowledge of their mode of doing business, acquired by one Aldrich, who, as we will assume for the purposes of this case, was the general agent of the defendant. We find nothing in these instructions that proved (certainly not conclusively) authority to the Kelleys either to receive payment before maturity, or to collect money, except where the securities were transmitted to them for that purpose. Stress is also laid on the evidence tending to show that Aldrich examined the account kept by the Kelleys in their books with defendant; but we discover nothing, and counsel have not pointed out anything, in this account, tending to advise Aldrich that the Kelleys were in the habit of collecting money on defendant's mortgages when the notes and mortgages had not been previously transmitted to them for that purpose.

The plaintiffs had to rely mainly upon the testimony of A. F. Kelley. As usual, his testimony was all in the air, indefinite and evasive, consisting principally of mere conclusions, inferences and "understandings," which, when analyzed, are found to be supported by a very small foundation of fact.

On the other hand, there was the positive testimony of both defendant and Aldrich to the effect that neither of them ever authorized the Kelleys, by correspondence or otherwise, to collect money, except where the note was first sent to them, and the correspondence of Aldrich with the Kelleys, which is in evidence, tends strongly to corroborate their testimony.

2. The Kelleys became insolvent, and made a general assignment for the benefit of their creditors, September 12, 1896. Subsequently, and some time during the same month, one of the plaintiffs wrote to the defendant. This letter was not introduced on the trial, and all that the record discloses as to its contents is that plaintiffs made inquiry whether the $300 paid to the Kelleys had been credited on the note, and requested the defendant "to put in [his] claim against the Kelley estate, to save [the plaintiffs] trouble to prove the payment." Defendant did not answer this letter, but sent it to a Mr. C. H. Smith, an attorney in Minneapolis, requesting him "to look the matter up."

So far as appears from the evidence, defendant did nothing by

way of an express disavowal or repudiation of the Kelleys' act until he commenced foreclosure of the mortgage for its full amount, when it fell due, on the 9th of the following February, It is claimed that this failure of defendant to expressly repudiate and disavow the Kelleys' act for so long a time after he was informed of what they had done, amounted, in law, to an implied ratification of their act.

It does not appear, certainly not conclusively, that this letter conveyed information to the defendant that the Kelleys had assumed to collect or receive the $300 as his agents. If not, there was nothing which he was called on to repudiate or disavow. For anything that was disclosed by the letter, the money might have been paid to and received by the Kelleys as plaintiffs' agents. In view of the language in which the request to prove the claim against the Kelleys' estate was expressed, it might be construed as a request that this should be done for the accommodation or benefit of the plaintiffs themselves, in order to avoid or reduce the loss. But we are not inclined to rest the decision of this point on this ground.

If the letter is to be construed as amounting to notice that the Kelleys had assumed to act as defendant's agents in receiving the money, the omission of the latter promptly to make an express disavowal of their authority to do so would be an item of evidence more or less in the nature of an implied admission, which a court should take into consideration, with the other evidence, in determining whether the Kelleys had original authority to receive the money. It might also be evidence tending to prove ratification, but, under the facts of the case, by no means conclusive.

Ratification, like authorization, is generally the creature of intent; but that intent may often be presumed by the law from the conduct of the party, and that presumption may be conclusive, even against the actual intention of the party, where his conduct has been such that it would be inequitable to others to permit him to assert that he had not ratified the unauthorized act of his agent.

Implied ratification, by mere silence or failure to expressly disaffirm, has its foundation in the doctrine of equitable estoppel, and proceeds upon the maxim of the law that he who remains silent when in conscience he ought to speak will be debarred from speaking when in conscience he ought to remain silent. Where the rights

75 M.—13

and obligations of third parties may depend on his election to ratify or disaffirm, a party is bound to act, or suffer the consequences of inaction; and if, after knowledge, he remains entirely silent and impassive, it is but just, when the protection of third parties require it, to presume that what, upon knowledge, he has failed to repudiate, he has tacitly ratified.   Mechem, Ag. §§ 155–157.

To render the evidence conclusive of implied ratification by silence or mere nonaction, the facts must be such that the law will presume that third parties would be prejudiced by the delay in speaking or acting, if the party should be thereafter permitted to say that he had not authorized or ratified the act of his assumed agent. This principle has not always been distinctly or expressly announced by the courts, but we think that it will be found that, in almost every well-considered case in which it has been held that there was an implied ratification by silent and merely passive acquiescence, the facts brought the case within the rule substantially as we have stated it.

In this case the facts strongly, if not conclusively, rebutted any such presumption; for it affirmatively appeared (1) that, before notice was communicated to the defendant, the Kelleys had already made a general assignment, by which all their assets had been impounded for the benefit of their creditors; and (2) that the time for proving claims against their estate had not yet expired, and did not for a long time thereafter.   Under the evidence, the question of ratification, like that of original authorization, was, at most, a question of fact for the trial court.

3. It appeared that Aldrich, a banker in Vermont, acted as agent for numerous other parties in placing loans through the Kelleys; and there was evidence tending to show that his general instructions to the Kelleys applied to all these loans, defendant's included, although no special mention was made of the latter; and certain errors are assigned upon the alleged rulings of the court excluding evidence of these general instructions, and as to how these loans were handled by the Kelleys, with the knowledge of Aldrich.

But an examination of the record shows that the offered evidence as to the instructions of Aldrich regarding these loans, and as to whether, to his knowledge, the Kelleys were in the habit of collect-

ing them without having first received the securities for the purpose of collection, was all admitted. The only evidence which seems to have been excluded was as to whether the Kelleys had been in the habit of extending the time of payment of loans other than defendant's without special authority from Aldrich; and we cannot see that this was material, as this loan was extended by the defendant himself, and the vital question in this case was whether the Kelleys had authority to receive payment except where the securities had been first sent to them for that purpose.

4. One of the grounds on which the plaintiff moved for a new trial was "newly-discovered," or rather, "new" evidence of ratification by the defendant. From the affidavits and counter affidavits used on this motion, it appeared that on December 28, 1897 (over 13 months after this action had been tried and decided), C. H. Smith, already referred to, made up from the account books of the Kelleys a statement of account in favor of defendant against the Kelleys' estate, one of the items of which was the $300 paid by plaintiffs to the Kelleys, and attached to this statement a form of an affidavit of proof to the effect that the Kelleys were indebted to the defendant in the full amount of the claim (over $1,100) for money collected and not remitted, and then sent it by mail to the defendant, with request that he execute and return it. Upon its receipt, defendant made oath to it, and returned it to Smith, who filed it on January 8, 1898, in the insolvency proceedings, as proof of a claim against the Kelley estate.

It further appeared that this claim was withdrawn by the defendant, with leave of the court, on the 23d of the following month. The defendant also made affidavit that he did not intend to make any claim against the Kelley estate for the $300, and was not aware that such was the legal effect of the proof; that he had no familiarity with legal proceedings; that he supposed the matter had received Smith's personal attention, and therefore assumed it was all right, without giving the matter any special consideration.

Upon this state of facts, the filing of the claim would be by no means conclusive or controlling on the question of ratification; and, under the circumstances, we certainly cannot say that the court abused its discretion in refusing to grant a new trial for the

purpose of giving the plaintiff an opportunity to introduce this item of new evidence.

The case is probably a "hard" one. It would appear from the record that a poor and aged couple, by reason of their ignorance of business, or their overconfidence in the integrity of others, are in danger of losing their little home, through the fraud and dishonesty of the Kelleys; but hard cases cannot be permitted to make bad law.

Order affirmed.