## CARL HAEDGE v. ELEANOR M. GAVER.[1]

December 23, 1927.

No. 26,354.

**When principal is bound by his acquiescence in agent's action for his benefit.**

1. Where a principal is informed by his agent that he intends to do, for the benefit of the principal, an act otherwise unauthorized, and the principal then, without objection, places in the hands of the agent the means to carry out the agent's purpose, the act, when done by the agent, is authorized and the principal is bound thereby.

The trial court's finding of agency is *held* sustained by the evidence.

**Assigned errors not reversible errors.**

2. Errors assigned as to other findings of fact and as to rulings on evidence considered and found not to present reversible errors.

[1]Reported in 217 N. W. 109.

The conclusions of law are *held* to be sustained by the findings of fact.

Agency, 2 C. J. p. 505 n. 38.
Appeal and Error, 4 C. J. p. 969 n. 56.
Attorney and Client, 6 C. J. p. 637 n. 39.

See note in L. R. A. 1918C, 222; 21 R. C. L. 931; 3 R. C. L. Supp. 1204; 6 R. C. L. 1296.

Action in the district court for Ramsey county for the cancelation of a $5,000 mortgage upon the payment by plaintiff to defendant of $2,126.22 paid out for the benefit of plaintiff by defendant's attorney. There were findings for plaintiff, and defendant appealed from an order, Hanft, J. denying her motion for a new trial. Affirmed.

*O'Brien, Horn & Stringer,* for appellant.

*Peterson & Oehler,* for respondent.

OLSEN, C.

Appeal by defendant from an order denying her motion for a new trial.

The defendant, Mrs. Gaver, sold her residence to one Whalen in June, 1926. She was to receive $13,500 in money and a mortgage back for $10,000. She made her own bargain and sale. $1,000 was to be paid down and $12,500 was to be paid on August 1, at which time the deed and mortgage were to be given and the deal closed. She employed an attorney by the name of Earl Miller to draw the preliminary contract and to thereafter make the deed and attend to any legal matters necessary in the transfer. He attended to these matters for her, and on July 29 the parties met at his office and the transfers were made and the deal closed, and defendant there received a check from Whalen for the $12,500. During this same period defendant also employed Mr. Miller as her attorney to make out and obtain an extension agreement for a mortgage held by her on some property in Lincoln county. Miller also offered her one or two other mortgage loans, which she did not accept, and offered to sell her a house, which she did not buy.

Miller knew that defendant was to receive this money from Whalen and knew that she at times invested money in real estate mortgages. The plaintiff, Dr. Haedge, was building a residence and wanted a loan of $4,000 or $5,000 to finance part of the cost. He had been offered a loan of $4,000 for that purpose through one Gauger, and intended to obtain such loan, but had made no contract or binding agreement therefor. Plaintiff was a friend of Earl Miller, and Miller obtained from him information about his wanting such a loan. Miller was also informed that another friend of his wanted to raise $5,000. Miller informed each of these men that he had a lady client who would have money to make these loans by August 1 and solicited each of them to make his loan from his client through him. They agreed so to do, and each then or thereafter agreed to pay or allow to Miller a small compensation in connection therewith, the plaintiff's agreement being to allow to Miller some $10 or $15 for legal services in connection with the loan; and the other borrower agreed to and did pay to Miller $40 for his services in the matter. Miller, after obtaining the promises from these two men to take such loans, informed defendant thereof and asked her to inspect the properties offered as security. She inspected the Haedge house, then in course of construction, and the property offered as security by the other party, and agreed to make the loans. Miller made some investigation as to the titles and prepared the mortgages and notes for each loan of $5,000, and the mortgages and notes were executed by the borrowers, plaintiff signing his papers in Miller's office. The mortgages, notes, title papers, registration certificate in plaintiff's case and abstract of title in the other case, and insurance policies accompanying each loan, were by the borrowers delivered to Miller and placed in his possession at his office. Plaintiff signed the mortgage and notes on July 28. At that time Miller stated to plaintiff: "Now, Carl, the money will be here tomorrow for you." Plaintiff replied: "Well, that is fine, Earl, I will be in to get it."

Miller then stated: "Well, I can't pay it to you. While I believe you are honest, but I have to protect my client against any liens that might be filed on your property for nonpayment of bills."

Plaintiff further testified that the arrangement of having Miller hold the money was satisfactory to him, and it was understood between them that the bills for labor and material on the house would be presented to Miller and paid by him. Two such bills, aggregating $2,126.22, were shortly after August 1, by direction of plaintiff, presented to Miller and paid by him. After completing the transaction with Whalen at Miller's office on July 29, Miller took up with defendant the matter of the two mortgages. She testified that he handed the mortgage papers to her in two envelopes; that in the envelope containing the Haedge papers there was the Torrens title certificate and the mortgage, notes and insurance policies, and in the envelope containing the Schmahl papers there was, besides the mortgage, notes and insurance papers, an abstract of title; that she examined the papers; that the following conversation occurred:

Miller: "Now, I have these two mortgages here for you, the Haedge mortgage and the Schmahl mortgage.

Defendant: "To whom will I make the check? ·

Miller: "Make it to me.

Defendant: "Is that all right with Schmahl and Dr. Haedge?

Miller: "Yes, that is all right. I am going to keep that $5,000 of Haedge's.

Defendant: ' "You are going to keep it?

Miller: "Yes, I am going to keep it and pay Dr. Haedge's bills."

Defendant then gave Miller her check for $10,000, payable to him, for the amount of the two mortgages. She kept the notes and the insurance policies in each case and the abstract in the Schmahl case, and left with Mr. Miller the two mortgages and the Torrens title certificate, for him to attend to the recording of the mortgages and payment of the mortgage taxes, to having the proper entry made in the Torrens title certificate, and to having the Schmahl mortgage and the duplicate Torrens title certificate mailed or returned to her after proper record had been made. Miller attended to these matters for her, and the papers were thereafter returned to her. Miller made no charge against defendant for his services. He charged the mortgage tax and recording fees paid by him in each case to the

respective borrowers.  Plaintiff concedes liability for such charge, and the other borrower paid such charge in his case.

Miller, as already noted, soon after July 29, paid out $2,126.22 for plaintiff on bills presented by contractors constructing plaintiff's house; he paid to Schmahl the amount of his mortgage, less the $40 agreed commission or compensation, and less the mortgage tax, recording and abstract fees in that case.  Thereafter, about August 19, Miller absconded or left, and he never paid or accounted for the balance of some $2,800 received by him on account of plaintiff's mortgage.

1.  The decisive findings of fact by the trial court are numbered 5 and 8, finding in substance that in receiving the mortgage money here in question and in holding it and doing all that he did in reference to said loan to plaintiff Miller was attorney and agent of the defendant, and was authorized to and acted for her and under her direction, and that defendant has not paid to plaintiff any part of the $5,000 mortgage except the $2,126.22 paid out by Miller to contractors for plaintiff's house.  These findings are challenged by the defendant as not sustained by any evidence in the case.  There is no evidence to sustain a finding of general authority to Miller to handle, hold or disburse loan money for defendant, nor is there any evidence, except as herein stated, to sustain a finding of express authority so to do in this specific instance.  Defendant transacted her own business and employed Miller, so far as express authority is shown, only to do conveyancing or legal work in specific instances.

Then comes a question of what was the effect of the transaction and conversation between defendant and Miller on July 29.  Miller had already informed plaintiff that he would not pay over the money to him, but would hold it to pay contractors' and labor and materialmen's claims on plaintiff's house, so as to protect defendant's mortgage against lien claims.  He informed defendant on July 29 and before she gave him her check that he would hold the money to pay plaintiff's bills and would not pay it to plaintiff.  Defendant knew that plaintiff's house was not completed, and it is readily inferred that she knew the bills referred to were the bills for constructing

the house and that holding the money was for her benefit and to protect her mortgage against mechanics' liens. She testified later on that she did not want any liens against the house and wanted to protect her first mortgage. Defendant paid the money over to Miller knowing that he would so keep and handle it for her benefit, and apparently acquiesced therein. He was concededly acting as her attorney in the matter to the extent of investigating titles, examining abstracts and papers, and seeing that proper record was made; in other words, to protect her to the extent that she should obtain and have proper security for her loan. To protect her mortgage against liens was not any serious departure from such employment. Holding the money for that purpose was quite clearly for her benefit. It was not requested by nor of any special benefit to plaintiff. Defendant did more than remain silent. She acted thereon by making the payment after receiving the information.

The rule that the unauthorized acts of an agent are binding upon the principal when he knowingly accepts benefits therefrom or, with knowledge thereof acquiesces thereto, or fails to disaffirm in proper time, is of course well established. Stearns v. Johnson, 19 Minn. 470 (540); Jones v. Bliss, 48 Minn. 307, 51 N. W. 375; Singer Mfg. Co. v. Flynn, 63 Minn. 475, 65 N. W. 923; Anderson v. Johnson, 74 Minn. 171, 77 N. W. 26; Smith v. Fletcher, 75 Minn. 189, 77 N. W. 800; Robbins v. Blanding, 87 Minn. 246, 91 N. W. 844.

In the case last above cited, the rule is stated as follows [at p. 249]:

"A failure to disavow the acts of a mere volunteer, who meddlingly assumes to act without authority, as the agent of another, will not constitute a ratification. But where a person in good faith assumes to act as the agent of another, but without authority in fact, in any particular transaction, the latter, upon being fully informed thereof, must, in cases where his silence might prejudice the assumed agent or innocent third parties, disavow the act within a reasonable time, or he will be held to have ratified it."

Such ratification is held to be based upon the doctrine of equitable estoppel. Smith v. Fletcher, 75 Minn. 189, 77 N. W. 800.

Here the question is not strictly one of ratification, because defendant was informed of what the agent intended to do before he acted. But the same principle would seem to apply. If a principal is informed by his agent that he intends to do an unauthorized act for his benefit, the principal should be held bound thereby, if he acquiesces and fails to object. Defendant should have declined to pay over the money to Miller to hold for her benefit for the purpose of paying bills to protect her mortgage from lien claims, unless she intended to authorize such method of payment.

The fact that Miller had possession of the notes, mortgage and title papers, and that he had negotiated the loan, created at most only apparent or implied authority in him to receive payment, and was overcome and destroyed when defendant was informed that he would hold the money for her benefit and would not pay it to plaintiff.

It is true that plaintiff also consented to this arrangement as to payment, but he never requested it and consented only after he had been informed by Miller that he would not pay the money over, but would hold it for the benefit of defendant. What plaintiff consented to was, in effect, that defendant herself might hold the money in the hands of her own attorney and for her benefit until required to pay the construction bills on the house. Such consent did not relieve defendant from responsibility.

The findings of fact by the trial court have the same weight as the verdict of a jury and are not to be reversed if the evidence as a whole reasonably tends to support them. The court may draw reasonable inferences from established facts; and, if different persons might reasonably draw different conclusions from the evidence, the findings based upon any such reasonable conclusions should not be disturbed. 1 Dunnell, Minn. Dig. (2 ed.) pp. 260, 261, 262 (§ 411), and cases there cited.

Under these rules the findings here challenged, that Miller was the agent of defendant in holding this money and that defendant had failed to pay to plaintiff the money in question, are sustained by the evidence.

2.  Other findings are challenged as not sustained by the evidence, and errors are urged for the refusal of the court to amend its findings by striking out and changing the findings complained of.  Without a detailed statement of these other findings, it is sufficient to say that they are principally findings of evidentiary fact, not affecting the decisive issues in the case which have been hereinbefore pointed out; and, even if in some particulars not sustained by the evidence, they would not change the result or require a reversal.

Errors are assigned as to rulings on evidence and the admission, over objections, of evidence as to other dealings between Miller and defendant.  The court went far afield in admitting evidence as to unrelated transactions.  Technically there was error, but the evidence so received was not prejudicial.  It was in some measure favorable to defendant in that it showed the agent, Miller, to be acting for her only as conveyancer or attorney in those matters and negatived any greater or other authority, or authority to hold or handle money for her.

It is urged that there was error in receiving in evidence statements made by Miller to plaintiff and to the witness Rundquist, that defendant was his client and that he was acting for her.  The statement to plaintiff was so closely connected with the transaction that it may well be held part of the res gestae.  The statement to Rundquist was but cumulative and might also well come within the rule making it admissible in support of other evidence of agency.

The evidence of Gunderson as to an alleged custom should not have been received, but it was of so little importance that it could not very well affect the result or prejudice the defendant.

The conclusions of law are sustained by the findings of fact.

Order affirmed.

STONE, J. took no part.