# FARMERS' STORE OF WHEATON, INC., v. DELAWARE FARMERS' MUTUAL FIRE INSURANCE COMPANY AND ANOTHER.[1]

August 28, 1953.

No. 36,006.

[1]Reported in 59 N. W. (2d) 889.

*Johanson, Winter & Lundquist,* for appellant.

*Rosengren & Rufer* and *Harry H. Peterson,* for respondents.

THOMAS GALLAGHER, JUSTICE.

Action for the reformation of a fire insurance policy and for recovery thereunder for loss occasioned by a fire which destroyed merchandise of plaintiff of the value of $5,512.35. The merchandise was stored in a barn located in Monson township in Traverse county some four or five miles northeast of Wheaton, where plaintiff maintained its principal mercantile business. The fire occurred on July 11, 1950.

For some years prior to the fire, it had been plaintiff's custom to store a part of its merchandise in a municipally owned building at the fair grounds outside the village limits of Wheaton. On October 1, 1946, defendant, a mutual fire insurance company, issued its fire policy No. 14778 to plaintiff in the principal sum of $1,500 covering merchandise thus stored in the fair grounds building. In 1948, by agreement between the parties, the coverage thereof was increased to $10,000, evidenced by a written endorsement issued by defendant and attached to the policy.

In the latter part of August 1948, plaintiff removed all its stored merchandise from the fair grounds building to a barn located on the southwest quarter of section 28 and the northeast quarter of section 33 in Monson township, where the fire later occurred. Other merchandise was subsequently stored in a new warehouse in Wheaton completed by plaintiff in October 1948, so that after August 1948 the fair grounds building was not required for storage purposes.

On September 7, 1948, at plaintiff's request, defendant issued to plaintiff a removal permit and an endorsement extending coverage of the policy to plaintiff's merchandise stored in the Monson township barn, at the same time terminating the coverage of merchandise

in the fair grounds building. This permit was issued in duplicate and a carbon copy thereof attached by defendant to its policy record. It specified:

"Property insured under Policy No. 14778 is now removed to the SW ¼ of Sec. 28 and NE ¼ of Section 33, Township of Monson, County of Traverse, State of Minnesota, and the above numbered policy is hereby made to cover at the above location and to cease to cover at the old location, from and after this date. * * *"

During August 1949, in the course of examining some 40 policies of various kinds which plaintiff owned, Mr. Chester H. Johanson, its general manager, secretary, and treasurer, noted that policy No. 14778 on its face appeared to still cover only property stored in the fair grounds building near Wheaton. The removal permit above described had not been attached thereto, although Mr. Johanson does not deny that this permit had been received by plaintiff. Since no property had been stored in the fair grounds building for approximately a year, Mr. Johanson, on behalf of plaintiff, forwarded the policy to defendant with a letter dated August 21, 1949, wherein he instructed defendant to:

"Cancel the enclosed policy covering merchandise in the County Fair buildings as of Sept 1st, 1949. We will then have this merchandise in our regular warehouse."

At the time defendant received this letter, Mr. Harold Johnson, its secretary and treasurer, knew that the policy covered merchandise stored in the barn in Monson township, but having no other information, instructions, or data with reference thereto cancelled it in its entirety in response to the directions in the letter. Thereafter no further assessment notices were forwarded to plaintiff, and nothing was done by either party with reference thereto. Testimony was submitted by Mr. Johnson, as secretary and treasurer of defendant, that he corresponded with policyholders who were confused about coverage in their policies and advised them with reference to any mistakes therein if such mistakes were noted by defendant. He testified that in this particular case he was not aware that plain-

tiff desired to cancel the policy only as to merchandise in the fair grounds building, as plaintiff now contends.

On July 11, 1950, a fire completely destroyed the merchandise in the Monson township barn with loss to plaintiff in the sum of $5,512.35, for which a claim was promptly filed with defendant and for which defendant denied liability. This action followed.

It is plaintiff's contention here that the policy was cancelled as a result of a mutual mistake by plaintiff and defendant in that the letter of August 21, 1949, reasonably construed, clearly indicated that plaintiff intended to cancel the policy only as to the merchandise in the building at the fair grounds and also that, in the absence of a mutual mistake, there was a unilateral mistake on the part of plaintiff, fundamental in its character, of which defendant should have been aware and of which it took an unconscionable advantage requiring equitable intervention to prevent intolerable injustice.

The trial court determined that the policy was cancelled as of September 1, 1949, at the direction of plaintiff; that there was no mutual mistake in connection therewith; and that defendant was not aware of a unilateral mistake on the part of plaintiff and of which it took advantage, holding that the long period between the cancellation and the fire, during which plaintiff took no action with reference to the policy or the assessments due thereon, was of controlling importance.

■ Defendant, as a Minnesota township mutual fire insurance company, is subject to the provisions of M. S. A. 67.10, which provides:

"* * * Membership may be terminated at any time by giving written notice to the secretary and paying the withdrawing members' share of all existing claims, or by the annulment of any policy by a majority of the directors and written notice thereof to the holder."

The policy here in question provided (Article VI, § 1):

"Any member may terminate his membership in the company by surrendering his policy to the secretary and paying all existing claims and expenses."

It is obvious from a reading of these provisions that plaintiff's letter of August 21, 1949, effectively cancelled policy No. 14778. The written notice forwarded by it was determinative thereof. 6 Appleman, Insurance Law and Practice, §§ 4226, 4227; 29 Am. Jur., Insurance, § 294; 45 C. J. S., Insurance, § 458. The unearned premiums became due plaintiff, but the fact that they had not been returned did not alter or change the fact that the policy was effectively terminated in compliance with plaintiff's directions. 6 Appleman, Insurance Law and Practice, § 4227, note 99; Annotation, Ann. Cas. 1918C, 129; Parsons & Arbaugh v. Northwestern Nat. Ins. Co. 133 Iowa 532, 110 N. W. 907; Gately-Haire Co. Inc. v. Niagara F. Ins. Co. 221 N. Y. 162, 116 N. E. 1015, Ann. Cas. 1918C, 115; McCormick v. Travelers Ins. Co. 215 Mo. App. 258, 264 S. W. 916. The purpose of the provisions referred to is to enable an insured to cancel a policy at will so that he may be enabled to obtain other coverage without delay. Parsons & Arbaugh v. Northwestern Nat. Ins. Co. *supra;* Insurance Commr. v. People's F. Ins. Co. 68 N. H. 51, 44 A. 82.

■ With reference to the question of mistake, either mutual or unilateral, it is clear that in determining issues relative thereto the general rule requiring affirmance of fact findings reasonably supported by the evidence is applicable. Keogh v. Sharon Township Mut. F. Ins. Co. 195 Minn. 575, 263 N. W. 601; Hartigan v. Norwich Union Ind. Co. 188 Minn. 48, 246 N. W. 477; Haedge v. Gaver, 173 Minn. 207, 217 N. W. 109.

Where the right of reformation is predicated upon mutual mistake and there is no evidence of fraud or inequitable conduct, the evidence to justify reformation must be clear, precise, and convincing. Johnson v. Giese, 231 Minn. 258, 42 N. W. (2d) 712; Keogh v. Sharon Township Mut. F. Ins. Co. *supra;* Mahoney v. Minnesota Farmers Mut. Ins. Co. 136 Minn. 34, 161 N. W. 217; Fritz v. Fritz, 94 Minn. 264, 102 N. W. 705; 5 Dunnell, Dig. & Supp. § 8328, *et seq.*

It must establish that the instrument sought to be reformed fails to embody the actual agreement between the parties and that the failure in this respect was due to the mutual mistake of the parties rather than the unilateral mistake of one party. Johnson v. Giese, *supra;* Mahoney v. Minnesota Farmers Mut. Ins. Co. *supra;* Fritz v. Fritz, *supra;* 5 Dunnell, Dig. & Supp. § 8329.

The record here discloses that, regardless of the mistaken concept of plaintiff's general manager as to the coverage of the policy, there was no lack of clarity in the directions he gave to defendant with reference to the cancellation thereof. The letter of August 21, 1949, is precise and direct in its instructions, and defendant's action in response thereto was exactly in accordance therewith. Nowhere is there evidence that defendant was aware that a mistaken concept of the policy's coverage existed or that plaintiff intended some action different from an outright cancellation as directed in the letter. Defendant had the right to believe that plaintiff understood where its merchandise was stored and the coverage it required therefor. It could reasonably assume from the statement in the letter with reference to plaintiff's "regular warehouse" that all merchandise covered by the policy was to be located therein. Mr. Johanson was familiar with the policy and other policies of plaintiff. At his request it had been extended previously to cover the merchandise in the Monson township barn. He was aware that this merchandise was still in storage there and, from his examination of all plaintiff's policies, should have known that no other policy extended coverage thereto. Such evidence would clearly sustain the trial court's finding of lack of evidence sufficient to support a finding of mutual mistake, and under the general rules applicable to fact questions, we have no choice but to affirm it. Keogh v. Sharon Township Mut. F. Ins. Co. 195 Minn. 575, 263 N. W. 601; Hartigan v. Norwich Union Ind. Co. 188 Minn. 48, 246 N. W. 477; Haedge v. Gaver, 173 Minn. 207, 217 N. W. 109.

■ Likewise, there is an absence of evidence sufficient to support a finding that defendant took undue advantage of a situation knowing or suspecting that a mistake had been made by plaintiff. To

support such a determination would require evidence of wrongful or inequitable conduct on the part of defendant after it became conscious that a mistake had been made by plaintiff. Lee v. Construction Service, Inc. 224 Minn. 149, 28 N. W. (2d) 69; Peterson v. First Nat. Bank, 162 Minn. 369, 203 N. W. 53, 42 A. L. R. 1185; Columbian Nat. L. Ins. Co. v. Black (10 Cir.) 35 F. (2d) 571, 71 A. L. R. 128; 5 Dunnell, Dig. & Supp. § 8329. The only action taken by defendant was a direct compliance with plaintiff's written instructions. Its secretary and treasurer, Mr. Johnson, testified that he was not aware that plaintiff desired to cancel the policy only as to the merchandise in the fair grounds building, and there is nothing in the letter which would lead to this conclusion. The cancellation of a policy under statutory provisions is accomplished by the act of the insured and is complete without any affirmative act on the part of the insurer. Under such circumstances, the claim of a unilateral mistake of which defendant was aware and of which it took unconscionable advantage must fall. The evidence outlined being sufficient to sustain the trial court's finding on this issue, it must be affirmed here.

█ Finally, it is contended that the failure of the insurer to return the unearned premium nullified the cancellation order. Here, upon cancellation by plaintiff, defendant became indebted to plaintiff for the amount of the unearned premium ($1.67) for which plaintiff is entitled to a credit. As above indicated, however, the cancellation became effective upon receipt of insured's directions to cancel, given in compliance with statutory and policy provisions which required only unilateral action on the part of the insured. As stated in the Gately-Haire case (221 N. Y. 169, 172, 116 N. E. 1017, 1018):

"* * * It [the policy] does not provide for a surrender of the policy or refund of unearned premium as condition precedent to effect a cancellation, but recognizes the absolute right of the assured to cancel a policy at any time, and having exercised such right that the assured becomes a creditor of the company for the amount of unearned premium * * *.

* * * * *

"* * * In the event of the failure on the part of the company to pay the same, the assured was then at liberty to 'sue and recover the same.' "

It is clear that the creation of a credit for unearned premiums in insured's favor was not effective in nullifying the cancellation of the policy at insured's direction.

Affirmed.

MR. JUSTICE DELL took no part in the consideration or decision of this case.

MR. JUSTICE NELSON, not having been a member of the court at the time of the argument and submission, took no part in the consideration or decision of this case.