Hillsborough, )
June, 1894. )

68   51
69  623

INSURANCE COMMISSIONER v. PEOPLE'S FIRE INSURANCE CO.

Under a provision in a policy of insurance that it may be terminated at the request of the insured, previous notice of his intention to surrender it to the company for cancellation is unnecessary.

The amount of a policy-holder's claim under a policy providing that, if it is cancelled by the company, he shall be entitled to a *pro rata* part of the premium, and, if cancelled by him, to the customary short rates, is not affected by the fact that a receiver of the company was appointed before the cancellation.

The appointment of a receiver of an insurance company does not terminate outstanding policies, which provide that they may be terminated by the company on notice and repayment of a portion of the premium; and losses occurring after his appointment are provable claims.

The amount of the claim of an insurance agent against a company in the hands of a receiver, on account of policies surrendered and held by him, is not affected by the appointment of the receiver.

The insolvency of an insurance company and the appointment of a receiver, with knowledge thereof on the part of the insured, do not amount to the exercise of the company's right, under the contract, to terminate the policy upon giving reasonable notice.

PETITION, for winding up the defendants' affairs. There was a decree appointing a receiver and authorizing him to settle up the business of the company. A commissioner was also appointed to pass upon the claims presented. Various questions of law having arisen upon the hearings before the commissioner, he asks the advice of the court.

There were outstanding at the time the receiver was appointed, a large number of policies which covered the liability of loss by fire for various lengths of time. By the terms of the insurance contract, a policy might be terminated by the insured at his request, in which case the company agreed to refund to him the unearned premium computed at the customary short rates; or the company might terminate the policy on giving reasonable notice, and paying to the holder a *pro rata* amount of the premium for the unexpired term of the policy. The company was financially embarrassed for two or three months before the appointment of the receiver, and during this time many policies were written. After the appointment of the receiver, agents of the company caused many policies to be collected from the insured and the risks to be covered in other companies; but

they did not at once return the cancelled policies to the receiver, but sent them in together at a later date. In some cases the agents paid to the insured the return premium *pro rata*, and took an assignment to themselves of the claim. It was a custom of the company in its settlements with agents to allow them the full premium on policies returned, if the insured refused to pay for them, and if they had been in force for three or four months and had been paid for in previous accounts. This was done as a matter of expediency, and not as a matter of right. The following questions were submitted :

1. Shall policies be treated as cancelled when received for that purpose by the agent, or when received by the company or the receiver ? ·

2. Shall policies cancelled after the appointment of the receiver be cancelled *pro rata* or at short rates ?

3. Shall policies be treated as cancelled at the date of the appointment of the receiver, so that claims for return premiums only can be presented thereafter and from that date ? ·

4. Shall losses since the appointment of the receiver be allowed as claims ?

5. Shall full premium less commission be allowed on policies in the hands of agents written before the appointment of the receiver, but not paid for, or shall a deduction be made for the time the policies, were in force ; and if the latter, shall the deduction be computed *pro rata* or at short rates ?

6. Shall policies surrendered by the insured before the appointment of the receiver in consequence of reports of the probable insolvency of the company, be cancelled *pro rata* or at short rates ?

*Edwin G. Eastman,* attorney-general, for the plaintiff.

*Nathan P. Hunt,* receiver, *pro se.*

*David Cross, Elijah M. Topliff,* and *Thomas O. Knowlton,* for the defendants.

*Oliver E. Branch, James F. Briggs,* and *Drury & Peaslee,* for certain policy-holders.

*Per Curiam.\** 1. The insurance contract entered into by the company and each of its policy-holders provides that it may be terminated at the request of the insured. · It does not require the insured to give the company a previous notice of his election to have the policy terminated. The right to a cancellation.

---

\* See foot-note on page 22.

upon request, and without limitation, is a material part of the contract. The insured might desire to obtain other insurance at once and might be prevented from protecting himself in this way, if he could not terminate his contract with this company without giving a previous notice of his intention to do so. In the absence of any stipulation in the contract requiring such notice to be given, the reasonable construction of the insured's contractual right to terminate the policy is, that he may do so by delivering it to an agent of the company with a request that it be cancelled, or with notice that he surrenders it for cancellation, or with any direct manifestation of his purpose to terminate it at that time. By such action the policy is terminated. *Crown Point Iron Co.* v. *Ætna Ins. Co.*, 127 N. Y. 608, 614–616. The appointment of the receiver did not change the right of policy-holders to terminate their contracts or make the manner of its exercise more difficult. Having the right under their policies to surrender them for cancellation before the decree appointing the receiver, they retained it afterward. The decree did not amount to a repudiation of the legal contracts made by the corporation. *Hyde* v. *Lynde*, 4 N. Y. 387, 392; High Rec., *s.* 204.

2. The question whether the amount to be repaid by the company on the cancellation of a policy is to be *pro rata* or "short rates" is determined by the contract, as it would have been if receivership proceedings had not been begun. Those proceedings introduced no new element into the contract, and did not deprive a policy-holder of his right to be repaid a *pro rata* part of the premium when his policy was cancelled by the company, or to an amount determined on the basis of "short rates" when he surrendered his policy for cancellation.

3. As the insurance contracts were not terminated by the appointment of the receiver, losses happening after his appointment are provable claims against the estate. Whatever may be the relation of policy-holders to one another in a mutual insurance company (*Commonwealth* v. *Mass. Ins. Co.*, 119 Mass. 45, 51), in a stock company they are not partners. With reference to the company, they are its creditors for the amount of the return premiums that may be due or for the losses that may have accrued under their policies. *People* v. *Security Life Ins. Co.*, 78 N. Y. 114, 122, 129. The objection that in this view of the rights of the policy-holders no distribution of the assets can be made until all existing policies have expired, does not seem to be important, since the receiver, representing the company, may terminate all policies upon notice, as provided in the contract.

4. The rights of agents of the company to compensation are to be determined according to the contracts, express or implied,

under which they were employed. The course of business adopted by the company in its dealings with the agents may be competent evidence upon that question. The mere fact that the company, as a matter of expediency, has been accustomed under some circumstances to allow them the full premiums on policies returned, which had been paid for in previous accounts, does not enable the court to find as a matter of law that all the agents were, or were not, to be credited with the premiums they voluntarily advanced. The question presented is one of fact, which evidently may be determined differently in different cases according to their varying circumstances.

5. The motive that has induced policy-holders to terminate their contracts is immaterial. The substance of the policies on this point, as stated in the case, is that the company could terminate the contracts "on giving reasonable notice and paying a *pro rata* amount," and that the insured could terminate them by request. The insolvency of the company, or a fear of its insolvency, or the appointment of a receiver, might be a reason which the insured would consider sufficient to act upon in exercising their right of terminating the contracts. But they could terminate them without any reason. The insolvency or financial embarrassment of the company, operating as a moral compulsion upon the insured and forcing them to surrender their policies for the protection of their interests, would not alter the fact that the contracts were terminated by them and not by the company.

*Case discharged.*

WALLACE, J., did not sit : the others concurred.