**Lynn VAUGHN and Marlene Vaughn, Plaintiffs-Appellants,**

**v.**

**GREAT AMERICAN INSURANCE COMPANY, a corporation, Defendant-Respondent.**

No. 8311.

Springfield Court of Appeals.

Missouri.

April 6, 1965.

Rehearing Denied May 5, 1965.

James E. Reeves, Ward & Reeves, Caruthersville, for plaintiffs-appellants.

Adolph K. Schwartz, St. Louis, James A. Vickrey, Caruthersville, for defendant-respondent.

HOGAN, Judge.

This action was brought on a fire insurance policy issued to the plaintiffs by the defendant insurer. The defendant pleaded cancellation of the policy prior to the occurrence of the fire, and the trial court, to whom the case was tried, found that the policy had been cancelled at the insureds'

request before the loss occurred. The plaintiffs appeal.

The facts material here are that in February 1961, the plaintiffs purchased a fire insurance policy covering the contents of a rented dwelling near Gibson Bayou, in Pemiscot County. The house is described as a family dwelling, and the issuance of the policy and payment of a year's premium by the plaintiffs is admitted. There seems to be no question that the policy was in force on November 3, 1961, a day before the fire in question occurred.

Sometime before the loss occurred, Mr. Vaughn decided to move to Memphis, Tennessee, though he promised to "stay on the job" at Steele, Missouri, until the "first of the year." About the first of September, Mrs. Vaughn and the plaintiffs' daughter moved to Memphis, and shortly thereafter the plaintiffs purchased a house there. Part of the contents of the Gibson Bayou dwelling was moved to the plaintiffs' new home, though there is a dispute as to what was removed and what was left in Missouri. Mr. Vaughn continued to occupy the Gibson Bayou dwelling during the week, but spent his weekends with his family in Memphis. About the first of November, someone broke into the Gibson Bayou house, and Mr. Vaughn inquired of the defendant's agent whether the burglary coverage of his policy provided reimbursement for the items taken. He was advised that it did not. On Friday, November 3, either because he was dissatisfied with the coverage or because he believed that there was no longer enough property remaining at Gibson Bayou to make it worthwhile to maintain the insurance, Mr. Vaughn took the policy to the defendant's local agent and requested that it be cancelled. On Saturday, November 4, the house and its contents were totally destroyed by fire. The defendant refused to investigate or adjust the loss, claiming that the policy had been cancelled, and this action followed. Inasmuch as this is a court-tried case, it is our duty to review the cause both upon the law and the evidence, and to

defer to the judgment of the trial court unless it is clearly erroneous. Rule 73.01(d), V.A.M.R.; Nye v. James, Mo.App., 373 S.W.2d 655, 661 [9].

Several matters were fully developed by the trial evidence, but the principal issue on this appeal is whether the process of cancellation had been fully completed when the loss occurred, and we have directed our attention to that issue. The appellants' three main points in this case are: first, that the evidence does not show either an unequivocal present intent on the insureds' part to cancel the policy, or any refund of the unearned premium, both of which are necessary elements of cancellation; second, that the local agent who accepted the policy for cancellation was only a soliciting agent without authority to receive and act upon a request for cancellation; and finally, that since Marlene Vaughn was a party to the contract but neither requested nor acquiesced in the cancellation, the attempted cancellation was a nullity.

So far as the policy itself is concerned, it is a so-called "standard" fire insurance policy with an extension of coverage endorsement. It was sold and issued to the plaintiffs by the Garrett Insurance Agency of Steele, Missouri, for a term of three years beginning February 25, 1961, and was admittedly in force on November 3, 1961. The policy provides for cancellation by either party in the following language:

"This policy shall be cancelled at any time at the request of the insured, in which case this Company shall, upon demand and surrender of the policy, refund the excess of paid premium above the customary short rates for the expired time. This policy may be cancelled at any time by this company by giving to the insured a five days' written notice of cancellation with or without tender of the excess of paid premium above the pro rata premium for the expired time, which excess, if not tendered, shall be refunded on demand. Notice of cancellation shall state that said excess premium (if not tendered) will be refunded on demand."

The issuing agency was the Garrett Insurance Agency, which then consisted of two partners, Mrs. Marcella Garrett and her son, Robert S. Garrett, who is also referred to as Bob, or Bobby. Both partners had equal authority in the management of the agency. There is a considerable amount of record evidence concerning the agency's powers and duties as the defendant's representative, and its methods of operation were developed in some detail. For the moment, it is sufficient to say that the record shows the Garretts had authority to accept risks, write insurance, countersign policies, and collect premiums for the defendant, and that the policy was issued and received by them for cancellation in the ordinary course of their business.

On Friday afternoon, November 3, Mr. Vaughn went to the Garrett Agency. He took the policy with him "and asked for Bobby and he wasn't there, so I gave the policy to Mrs. Garrett and told her that I—'Just cancel the thing'; I didn't have any burglary coverage on it; looked like what I needed more than I needed the fire coverage, and she says, 'Well, are you sure that you want to cancel it?' and I said, 'Well, just have Bobby call me.' Rather than go into the whole thing with her and all that kind of stuff, I told her to just have Bobby to call me." When he was asked to go over this sequence of events on cross-examination, Mr. Vaughn stated that he "personally requested the cancellation," and that "in essence" he had said to cancel the policy and "have Bobby call me." He did not ask for a refund of the unearned premium at that time because "that is what I was going to talk to Bobby about. * * *"

Mrs. Garrett's recollection of the Friday conversation with Mr. Vaughn was that he had brought the policy in and had said, "We have moved to Memphis and I don't need it any longer. I don't have enough property out there to keep it in force." It was Mrs. Garrett's recollection that Mr. Vaughn said,

"If there is a return premium you can hand it to Bob sometime." Mrs. Garrett was positive that Mr. Vaughn had said, "Cancel this policy." It is clear, we would add, that Mrs. Garrett did not tender the refund until after the fire loss had occurred.

■ While we can agree with the appellants that cancellation of a fire insurance policy by the insured requires a clear and unequivocal present intent to cancel, 29 Am. Jur. Insurance, Section 402, p. 751, we cannot agree that Mr. Vaughn's actions could be called either equivocal or subject to misinterpretation; nor do we think, as the appellants argue, that payment or tender of the unearned premium by the insurer was a condition precedent to cancellation of this policy by the insured. It is true that a number of cases decided in this jurisdiction hold that if the insurer itself seeks to cancel a fire insurance policy it must tender the unearned premium to effect a valid cancellation.[1] However, it seems obvious to us that any consideration of the subject must be made in light of the specific policy provisions involved,[2] and in any event, it is not the *insurer's* right to cancel which is called in question here, but that of the insured. The policy in this instance provides that it *shall* be cancelled at any time at the request of the insured. By its execution of the pol-

icy, the insurer has agreed to this in advance. Though we are not called upon and do not attempt to define the insured's right of cancellation in theoretical terms, it seems to us that the insured is simply given the power to terminate the contract at any time, and that neither the consent of the insurer nor any action upon its part is necessary to effect the cancellation. When Mr. Vaughn surrendered the policy and requested that it be cancelled, he had done all that he could do. In our view of the matter, the contract was then at an end. In short, the request itself effected the cancellation, though the insurer became the insured's debtor as to the unearned premium.[3]

The appellants also argue that the Garrett Agency was only a soliciting agency and as such had no authority to receive and act on the insured's request for cancellation. The respondent answers that the Garrett Agency was rather an "issuing" agency with full powers to act for and bind the insurer. The appellants' contention is really that the cancellation could not be considered complete until the request was received and acted upon by the insurer. Again, we think the appellants' view of the matter cannot be sustained.

■ There is considerable record evidence dealing with the Garrett Agency's

1. Brown v. Presidential Fire & Marine Ins. Co., Mo.App., 24 S.W.2d 206, 207 [2]; Dubinsky v. Hartford Fire Ins. Co., Mo.App., 196 S.W. 1045, 1048 [4]; Payne v. President, etc., of Ins. Co. of North America, 170 Mo.App. 85, 88, 156 S.W. 52, 53; Chrisman & Sawyer Banking Co. v. Hartford Fire Ins. Co., 75 Mo.App. 310, 316.

2. Ireland v. Manufacturers and Merchants Indemnity Co., Mo.App., 298 S.W.2d 529, 533–534 [5]. For a discussion of the various types of cancellation clauses, see Genone v. Citizens Ins. Co. of New Jersey, 207 Ga. 83, 60 S.E.2d 125, 128– 129; Anno., 16 A.L.R.2d 1200, 1202 (1951); Comment, Cancellation of Insurance Contracts, 13 Ark.L.R. 360, 368– 370 (1959). Admittedly, there is a conflict of authority where the so-called "standard" cancellation provision is in-

volved. Anno., supra, 16 A.L.R.2d at 1203.

3. Parsons & Arbaugh v. Northwestern Nat. Ins. Co., 133 Iowa 532, 110 N.W. 907, 908; Eicher-Woodland Co., Inc. v. Buffalo Ins. Co. of N. Y., 198 La. 38, 3 So.2d 268, 271–272 [4, 5]; Farmers' Store of Wheaton, Inc. v. Delaware Farmers' Mutual Fire Ins. Co., 240 Minn. 170, 59 N.W.2d 889, 893 [8]; Gately-Haire Co. v. Niagara Fire Ins. Co., 221 N.Y. 162, 116 N.E. 1015, 1016–1017, 1019; Crown Point Iron Co. v. Aetna Ins. Co., 127 N.Y. 608, 28 N.E. 653, 655, 14 L.R.A. 147; Camden Fire Ins. Ass'n v. Jennings, Tex.Civ.App., 93 S.W. 2d 530, 531–532; State Farm Mut. Automobile Ins. Co. v. Pederson, 185 Va. 941, 41 S.E.2d 64, 67 [2]. Cf. McCormick v. Travelers Ins. Co., 215 Mo. App. 258, 275, 264 S.W. 916, 922–923 [8], involving a life insurance policy.

methods of doing business. We consider it unnecessary, however, to restate all this evidence in detail, for while the Garretts' agency contract does not expressly confer any authority to cancel insurance policies, it does indirectly refer to cancelled liability; and although the agreement itself grants authority in terms to "receive and accept proposals for * * * contracts of insurance," as the appellants say, still it is clear to us that so far as the defendant insurer was concerned the Garretts had authority to accept risks, write insurance, countersign policies, and collect premiums. This made them "general agents" of the defendant insurer[4] and not merely "soliciting agents," so far as those terms are applicable in this case.

█ █ We do not believe, on the other hand, that the authority of the Garretts to receive and act upon requests for cancellation depends upon their status as "general agents" or "soliciting agents" for the insurer. It is true that those terms have a commonly accepted meaning, Corder v. Morgan Roofing Co., 355 Mo. 127, 138, 195 S.W.2d 441, 445 [1], but the distinction between a "general agent" and a "special agent" is often vague and imprecise and "can not be marked with exactitude." Restatement (Second), Agency § 3, comment a (1958). In this case, we think the Garrett Agency had the implied authority to accept a notice of cancellation. The law does not require that notice of cancellation be given to the insurer itself rather than the agent,[5] and the possibility of cancellation was one of the things contemplated by the parties to this contract when it was executed. The Garrett Agency was shown to be authorized to attend to all the defendant's ordinary business in the locality where they operated.

When policies of the sort involved here were desired, one or the other members of the agency obtained the location and description of the property, and then the agency would " * * * figure according to the rates·in [the] rule books the cost of the premium and how it [would] be paid." The term of the policy was then agreed upon by the agent and the prospective insured, and the agency would then "write the policy, sign the contract, deliver it to the insured and collect the money for it and pay the company, less the commission due. * * *" The insurer would then receive a copy of the policy. The evidence also shows that while they have no express directions on the subject, the Garretts have developed and used a standard procedure in dealing with cancellations, and that procedure was followed here.

█ As has been pointed out, it is seldom that the specific directions given by a principal include all the acts he expects his agent to do, or refrain from doing, and all specific directions include by implication the authorization to do what is reasonably necessary to accomplish the principal's purpose. Restatement (Second), Agency § 35, comment b; 1 Mechem, Agency, § 715, pp. 502–503 (2d ed. 1914). We cannot escape the conclusion that when the insurer executed the policy it had in view that the insured might wish to cancel it, and discharge of the insurer's obligation to accept notice of cancellation was as much a part of the insurer's business purpose as receiving notice of a loss, or performance of any of the other provisions of the insurance contract. In our view, independent of any express provision of the contract of agency, the Garretts had authority to receive notice of cancellation as a necessary incident to their

4. Bennett v. Royal Union Mut. Life Ins. Co., 232 Mo.App. 1027, 1044, 112 S.W. 2d 134, 145–146 [23] [25]; Bergerson v. General Ins. Co. of America, 232 Mo. App. 549, 554, 105 S.W.2d 1015, 1018 [7, 8]; Gaines v. Berkshire Life Ins. Co., 228 Mo.App. 319, 323, 68 S.W.2d 905, 907 [4, 5]; 29 Am.Jur. Insurance, § 151, pp. 550–551.

5. Manhattan Life Ins. Co. v. Allison, 100 Colo. 1, 64 P.2d 1265, 1266 [1]; Insurance Commissioner v. People's Fire Ins. Co., 68 N.H. 51, 44 A. 82, 83 [1]; Victory Ins. Co. v. Schroeder, 167 Okl. 516, 30 P.2d 894, 895–896 [1]; State Farm Mut. Auto. Ins. Co. v. Miller, 194 Va. 589, 74 S.E.2d 145, 148 [1].

authority to conduct the insurer's business, and notice to them was as effective as notice given directly to their principal. Johnson v. Maryland Casualty Co., La.App., 151 So. 95, 96 [3]; cf. State Farm Auto. Ins. Co. v. Miller, supra, n. 5, 194 Va. 589, 74 S.E.2d at 148 [2].

The final point presented by the appellants is that the cancellation was not effective because Marlene Vaughn was a party to the contract and she neither requested nor acquiesced in the cancellation of the policy. The real issue presented on this point is, of course, whether Mr. Vaughn was acting as his wife's agent in surrendering the policy and requesting its cancellation.

The parties have not cited, nor has our independent research disclosed, a case from our own jurisdiction precisely similar on the facts, and we must therefore be guided by the general principles of law of agency relating to husband and wife. The appellants do not dispute that Mr. Vaughn was acting as his wife's agent in procuring the policy; what they question is his authority to request and obtain cancellation without her express consent.

The record evidence on this point, which consists almost wholly of Mrs. Vaughn's testimony, indicates that such business as the Vaughn family had (of this kind) was attended to by Mr. Vaughn. Though Mrs. Vaughn requested that her husband obtain the policy—"because the wiring was bad in the house"—and later inquired about the policy, Mr. Vaughn himself procured the insurance and paid for it from his own funds, in which Mrs. Vaughn apparently had no interest. The personal property remaining at the Gibson Bayou home was left in the care of Mr. Vaughn, and the other probative evidence on this point indicates that, at the time in question, Mr. Vaughn attended to the family's business affairs while Mrs. Vaughn, in her words, " * * got three-and-a-half a day, three meals and a half of a bed."

While the evidence is not as fully developed or as satisfactory as it might have been on this aspect of the case, we think the trial court could reasonably have concluded that in requesting cancellation Mr. Vaughn was acting as his wife's agent. We agree that neither husband nor wife has the power to act as the other's agent merely by virtue of the marital relation, but the fact that a husband is habitually permitted by the wife to attend to some of her business affairs—which to us is the sense of Mrs. Vaughn's testimony—furnishes some basis for finding that he is authorized to attend to all of her business affairs. Restatement (Second), Agency § 22, comment b, p. 94. In this case it is reasonably inferable that Lynn Vaughn was in charge of the property remaining at Gibson Bayou (regardless of the ownership of that property), that he procured and paid for the insurance on it, that he selected the kind of insurance to be obtained, that he retained the policy after it was issued, and that he generally managed the family business affairs. Though such evidence would not be conclusive on the point, we cannot say the trial court was clearly in error in finding Mr. Vaughn to be his wife's agent in cancelling the policy. Trundle v. The Providence-Washington Ins. Co., 54 Mo. App. 188, 195–196 [4]; cf. Singer v. Charter Oak Ins. Co., 22 F. 774.

Since no clear error appears upon the record presented, the judgment is affirmed.

RUARK, P. J., and STONE, J., concur.