S & P OYSTER COMPANY, INC.,
Plaintiff–Respondent,

v.

UNITED STATES FIDELITY AND
GUARANTY COMPANY,
Defendant–Appellant.

UNITED STATES FIDELITY AND
GUARANTY COMPANY,
Plaintiff–Appellant,

v.

COMMERCIAL UNION INSURANCE
COMPANY, Defendant–
Respondent.

Nos. 63047, 63067.

Missouri Court of Appeals,
Eastern District,
Division Two.

Nov. 2, 1993.

Rehearing Denied Dec. 9, 1993.

Dubail Judge, P.C. by Nancy E. Emmel, J. Dennis O'Leary, St. Louis, for defendant-appellant.

Brown & James, P.C. by Russell F. Watters, Robert W. Cockerham, and T. Michael Ward, St. Louis, for plaintiff-respondent.

KAROHL, Judge.

The trial court granted summary judgment in favor of plaintiff, S & P Oyster Company, Inc. (S & P), and against defendant, United States Fidelity and Guarantee Company (USF & G), awarding S & P $161,513.52 based on a finding that an insurance binder issued by USF & G was in effect when S & P suffered a fire loss. Prior to entry of this judgment the trial court denied USF & G's motion to add Commercial Union Insurance Co. as a third-party defendant. In a separate cause, the trial court granted dismissal of USF & G's petition for declaratory judgment against Commercial Union. After USF & G issued its insurance binder, Commercial Union issued a binder on the same property. After the loss Commercial Union paid on its policy. USF & G appealed the orders entered in both cases.

In this consolidated appeal, USF & G contends the trial court erred in: (1) granting summary judgment in favor of S & P in Cause No. 902–00141 because a factual issue existed as to whether its insurance binder was canceled by S & P prior to the date of S & P's fire loss; (2) denying USF & G's motion to add Commercial Union as a third party in Cause No. 902–00141; (3) granting Commercial Union's motion to dismiss USF & G's petition for declaratory judgment, Cause No. 924–00177, because the court considered facts outside the pleadings and did not treat the motion as one for summary judgment; and (4) denying USF & G's motion for summary judgment against S & P because S & P was not the real party in interest and because S & P canceled its coverage with USF & G. We affirm.

S & P Oyster Company operates a restaurant located in St. Louis County. At the expiration of its property insurance coverage for the period ending February 4, 1989, S & P secured two insurance binders purporting to cover S & P's property from February 4 to March 4, 1989. The first binder S & P acquired was from USF & G, its insurer for the previous year. The second binder was with Commercial Union.[1]

Mindful of the need to give all favorable inferences to the party against whom summary judgment was entered, the events relevant to the disposition of this case and to USF & G's arguments are as follows:

February 4, 1988: USF & G issued insurance coverage to S & P, including damage to property from fire, to expire February 4, 1989.

February 3, 1989: USF & G issued a binder extending S & P's coverage from February 4, 1989 to March 4, 1989.

(On or about) February 4, 1989: S & P procured an insurance binder from Commercial Union for the period from February 4, 1989 to March 4, 1989.

(On or about) February 4, 1989: An S & P employee called S & P's insurance broker, an agent of USF & G, to say that the policy with USF & G should be canceled because S & P had obtained coverage elsewhere.

---

1. The Commercial Union policy contains the following condition:

G. *OTHER INSURANCE*

2. If there is other insurance covering the same loss or damage, ... we will pay only for the amount of covered loss or damage in excess of the amount due from that other insurance, whether you can collect on it or not.

(On or about) February 7, 1989: S & P's former broker, the agent of USF & G, was shown a copy of the Commercial Union binder. An underwriter with USF & G was notified of S & P's requested cancellation. The underwriter started the process to terminate coverage; no new policy was to be issued. The broker expressed continued interest in recovering S & P as a customer for USF & G.

February 11, 1989: The premises of S & P were damaged by fire.

S & P filed a claim for the fire loss with USF & G. USF & G denied coverage citing the cancellation of the policy and procurement of the Commercial Union policy. Commercial Union paid S & P $161,013.52 for the fire loss less $500 deductible. S & P executed an "ASSIGNMENT IN SUBROGATION" of its rights with respect to insurance coverage with USF & G in favor of Commercial Union. The following litigation and events ensued:

January 12, 1990: S & P filed a petition seeking judgment against USF & G in the amount of $161,513.52 for the February 11, 1989 fire.

April 30, 1992: USF & G filed a motion for summary judgment against S & P and a motion for leave to amend and to add Commercial Union as a third-party defendant.

May 21, 1992: Commercial Union denied any assignment of S & P's right to sue and recover money from USF & G. In the alternative, it "reassigned" any rights it may have acquired when it paid S & P on its policy.

May 26, May 29, and June 3, 1992: USF & G's two April 30 motions were overruled.

June 24, 1992: USF & G filed a petition for declaratory judgment, seeking a declaration of rights and liabilities of S & P and Commercial Union with respect to S & P's February 11, 1989 loss.

September 21, 1992: S & P filed a motion for summary judgment against USF & G.

October 8, 1992: S & P's motion for summary judgment was sustained.

October 9, 1992: Commercial Union's motion to dismiss USF & G's petition for declaratory judgment was sustained.

USF & G's first point on appeal is twofold. In arguing summary judgment in favor of S & P was granted in error, it first utilizes general principles of contract law to suggest the insurance binder was canceled through repudiation. Alternatively, USF & G claims that S & P substantially complied with the binder's cancellation requirement of written notice when S & P provided USF & G's agent with a copy of the Commercial Union insurance binder and financing agreement. Both positions tacitly acknowledge cancellation in strict accord with the written provisions of its binder did not occur.

■ In reviewing the grant of summary judgment, we scrutinize the record in a light most favorable to the party against whom judgment was entered, according to that party all reasonable inferences which may be drawn from the evidence. *Maryland Cas. Co. v. Martinez,* 812 S.W.2d 876, 879 (Mo. App.1991). If summary judgment is sustainable as a matter of law under any theory, it will be affirmed. *Meyer v. Enoch,* 807 S.W.2d 156, 158 (Mo.App.1991). Summary judgment is appropriate only if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits filed in connection with the motion, demonstrate there is no genuine issue as to any material fact and that movant is entitled to judgment as a matter of law. Rule 74.04(c).

The existence and validity of the insurance binder between S & P and USF & G for the period from February 4, to March 4, 1989, is undisputed. The binder provided:

This binder may be cancelled by the insured by surrender of this binder or by written notice to the Company stating when cancellation will be effective. This binder may be cancelled by the Company by notice to the insured in accordance with the policy conditions. This binder is cancelled when replaced by a policy. If this binder is not replaced by a policy, the Company is entitled to charge a premium for the binder according to the Rules and Rates in use by the Company.

The policy conditions relating to cancellation to which the binder refers provided:

1. The first Named Insured shown in the Declarations [S & P] may cancel this policy by mailing or delivering to us advance written notice of cancellation.

2. We may cancel, not renew, reduce in amount or adversely modify this policy by mailing or delivering to the first Named Insured written notice of this action at least:

   a. 10 days before the effective date of this action if due to nonpayment of premium or evidence of incendiarism; or

   b. 30 days before the effective date of this action if for any other reason.

3. [USF & G] will mail or deliver our notice to the first Named Insured's last mailing address known to us.

4. Notice of:

   a. Cancellation will state the effective date of cancellation. The policy period will end on that date.

   b. Any other action will state the effective date of that action.

5. If this policy is cancelled, not renewed, reduced in amount or adversely modified, [USF & G] will send the first Named Insured any premium refund due. If we take this action, the refund will be pro rata. If the first Named Insured cancels, the refund may be less than pro rata. This action will be effective even if we have not made or offered a refund.

6. If notice is mailed, proof of mailing will be sufficient proof of notice.

The parties agree that S & P did not surrender the USF & G binder or give written notice of cancellation to USF & G. They also agree that USF & G did not effect cancellation of the binder or give written confirmation of S & P's attempt to cancel. On the contrary, USF & G's agent admits he had not given up trying to recover S & P's insurance business. The decisive and narrow question is whether S & P's oral statements to the USF & G agent indicating its desire to cancel the USF & G policy and its conduct in showing the agent the Commercial Union binder are sufficient to constitute cancellation of the USF & G binder within the express terms of the binder or as a matter of law.

■■ USF & G first relies on the principle of anticipatory repudiation, which occurs when a party to a contract manifests a positive intention not to perform either by expressed statement or by conduct. *Hart and Son Hauling, Inc. v. MacHaffie,* 706 S.W.2d 586, 588 (Mo.App.1986). USF & G maintains S & P unilaterally terminated the insurance contract by telephoning USF & G's agent to expressly request that the policy be canceled, and further manifested this intent by providing proof of the Commercial Union binder and financing agreement between Commercial Union and S & P. USF & G argues it is manifestly unjust for a party to be able to prevail once it has repudiated the prior contract. This principle, however, has not been recognized in construing insurance contracts. In order to cancel an insurance policy, strict and literal compliance with the contractual requirements must be met. *Safeco Ins. Co. of America v. Stone & Sons, Inc.,* 822 S.W.2d 565, 568 (Mo.App.1992). This is true even if the insured attempts to effect a policy cancellation. *Farrar v. Mayabb,* 326 S.W.2d 337, 340 (Mo.App.1959).

The benefits of certainty in insurance matters are enhanced by requiring strict compliance. Even though notice requirements for insurance cancellation and the need for strict compliance with a policy's provisions protect an insured, insurance companies benefit from their own deliberately precise cancellation requirements as well. Insurance companies benefit both by receiving premiums until policy cancellation is effective, and by having the cessation of the liability of the insurer ascertained with specificity. USF & G argues that S & P's oral request to cancel the policy and its act of showing the Commercial Union binder to an agent of USF & G is sufficient under the circumstances because S & P can repudiate a provision of the binder agreement. USF & G issued the binder and is chargeable for the obligations it assumed. USF & G argues fairness should replace enforcement of its agreement, preferring to rely on the subsequent coverage to relieve it of its agreement. This would inject uncer-

tainty into such agreements. We hold strict compliance controls.

■ USF & G alternatively contends that S & P's conduct in showing the new insurance policy between S & P and Commercial Union to the USF & G agent, along with the financing statement, amounts to written cancellation according to the terms of the policy. In support of its theory, USF & G relies on *Schroeder v. Horack*, 592 S.W.2d 742 (Mo. banc 1979) and *Vaughn v. Great American Ins. Co.*, 390 S.W.2d 622 (Mo.App.1965). Both *Schroeder* and *Vaughn*, however, have significant factual variations. The insured in *Schroeder* wrote, "Note: This policy was cancelled effective May 8, 1974. Please remit a check for portion of payment not used. Lower your rates and I'll be back" on the face of a ."Renewal Questionnaire" and mailed it to the insurance company. *Schroeder*, 592 S.W.2d at 743. This was held to constitute written cancellation in full compliance with the cancellation provisions of the policy. *Id.* at 744. In *Vaughn*, the insured physically surrendered the insurance policy to his soliciting agent. *Vaughn*, 390 S.W.2d at 624. Also, the "policy in this instance provides that it *shall* be cancelled at any time at the request of the insured." *Id.* at 625. No mention is made of any requirement that there be written notice. In the present case, the binder was not surrendered and nothing regarding USF & G's binder was reduced to writing. Neither the acts of S & P or USF & G comply with the cancellation provisions of the insurance contract.

■ USF & G's second point is the trial court abused its discretion in denying USF & G's motion to add Commercial Union as a third-party defendant because USF & G "could not recover against Commercial Union unless S & P prevailed against [USF & G] and therefore joinder under Rule 52.11 was appropriate." There was no relationship between USF & G and Commercial Union. USF & G has no cause of action against Commercial Union. Commercial Union did not owe USF & G anything. Further, USF & G filed its claim in the second lawsuit which was dismissed.

■ Similarly, USF & G's third point is the trial court erred in granting Commercial Union's motion to dismiss the second lawsuit seeking declaratory judgment, "because the court admitted facts beyond the pleadings, including ... the court's grant of summary judgment [in the S & P suit]." We find no error in dismissing the suit against Commercial Union based upon USF & G's petition. The absence of any allegation of a legal relationship between these two insurers emphasizes the absence of a cause of action for declaratory judgement. *See e.g., Hartford Ins. Co. v. Federal Ins. Co.*, 682 S.W.2d 871 (Mo.App.1984) (dismissal upheld based on lack of standing). Where S & P was not a party to the declaratory judgment action it was not possible to declare rights or obligations affecting S & P.

■ Finally, USF & G contends the trial court erred in denying USF & G's motion for summary judgment against S & P because S & P was not the real party in interest in that S & P assigned its rights to Commercial Union, *and* because S & P had canceled its coverage with USF & G prior to the loss. We have considered and rejected the cancellation argument. The assignment claim was denied and this claim of error ignores the alternative, a Commercial Union assignment back to S & P. USF & G pleaded in its answer that S & P had no loss because it was fully paid. This was not a ground mentioned in USF & G's motion for summary judgment and is not argued here. The obligation of S & P to Commercial Union for contribution on the theory insured is entitled to only one recovery was not before the trial court on the motion for summary judgment and is not before us.

The judgments of the trial court are affirmed in all respects.

CRANE, P.J., and CRAHAN, J., concur.