Joyce A. BLANKS,
Plaintiff/Respondent,

v.

FARMERS INSURANCE COMPANY,
INC., Defendant/Appellant.

No. ED 80554.

Missouri Court of Appeals,
Eastern District,
Division Four.

Sept. 3, 2002.

Motion for Rehearing and/or Transfer to
Supreme Court Denied Nov. 14, 2002.

John K. Greider, John Greider Law Office, Clayton, MO, for Appellant.

David C. Knieriem, Morgan & Assoc. Law Offices, St. Louis, MO, for Respondent.

SHERRI B. SULLIVAN, Judge.

### Introduction

Farmers Insurance Company, Inc. (Farmers) appeals from a trial court Judgment and Order (Judgment) awarding Joyce A. Blanks (Blanks) $100,000, plus costs and pre-judgment interest, on her Petition for Collection of Judgment (Petition). We affirm.

### Factual and Procedural Background

The parties submitted the case to the trial court upon a joint stipulation of facts and the depositions, with related exhibits, of Charles Cobillas (Cobillas), an underwriting agent for Farmers, and Wayne Ford (Ford), an insurance agency owner mainly representing Farmers. The record established the following. Farmers issued an automobile liability policy to Soon Hae Kim (Kim) that applied to a 1981 Caprice automobile owned by Kim. The policy included a liability coverage limit for bodily injury of $100,000 for each person. Kim paid the premium on the policy for a six-month period effective March 9, 1996.

Regarding termination of coverage, the policy provided the following:

a. Cancellation or reduction of coverage:

(1) *You may cancel this policy by advising us in writing when at a future date the cancellation is to be effective.*

(2) We may cancel, change the renewal date, or cancel or reduce all or any portion of any coverage by mailing notice to you at the address shown in the Declarations or by delivering the notice:

(a) Not less than 10 days prior to the effective date of such cancellation, reduction, or change of renewal date:

(i) For nonpayment of premium, or

(ii) If the policy has been in effect less than 60 days and is not a renewal

(b) Not less than 30 days prior to the effective date of cancellation for any other circumstance.

If we cancel or reduce all or any portion of any coverage, the notice we send you will describe that portion we are canceling or reducing.

(3) (a) Our right to cancel is limited if this policy has been in effect for 60 days or is a renewal and insures either of the following:

(i) a private passenger type auto, or a station wagon, that does not carry passengers for hire and is not rented to others

(ii) . . . .

(b) We can cancel in such case only if any of the following apply:

(i) you fail to pay the premium when due

(ii) the driver's license of the named insured has been under

suspension or revocation at any time during the policy period.

(c)....

(Emphasis added.)

The policy was not canceled for nonpayment of premium and had been in effect for a period exceeding sixty days. Kim's driver's license was not under suspension or revocation at any time during the policy period. The policy also included the following:

DEFINITIONS

Throughout this policy, "you" and "your" mean the "named insured" shown in the Declarations and spouse if a resident of the same household.

On September 1, 1996, Blanks's son was driving southbound on I–270 when he was struck by Kim who was driving his Caprice automobile the wrong way, northbound on southbound I–270. Both Blanks's son and Kim were killed.

On July 29, 1997, Blanks obtained a judgment against Kim in the amount of $100,000 plus costs for the wrongful death of her son caused by the negligence of Kim in the operation of his automobile. By its terms, the judgment is recoverable only pursuant to Section 537.021(2)[1] against Farmers to the extent that Kim was insured against liability for damages for wrongdoing on September 1, 1996.

Farmers received notice of the action and a demand that it defend Kim. Farmers denied that liability coverage was in effect on September 1, 1996, and declined to provide a defense. Farmers maintained that the policy expired on July 22, 1996 per a notice of cancellation dated August 2, 1996 and a request in writing forwarded to Farmers' regional office.

In his deposition, Cobillas testified to the following. Cobillas shared an office with Ford. When Ford was out of the office, Cobillas took care of his clients and vice versa. Kim was one of Ford's clients. Cobillas did not know Kim. On July 22, 1996, Cobillas took a telephone call from Kim. Kim, who spoke English poorly, indicated that he wanted to cancel his insurance policy on his 1981 Caprice automobile effective on that date because the car was junked and did not run. Cobillas could not recall if Kim had said the car was sold or that he had gotten rid of it or was going to get rid of it. While on the telephone with Kim, Cobillas filled out a "Form 212," a cancellation form. Cobillas obtained Kim's policy number from his file, which Cobillas had on his desk during the telephone conversation. Cobillas sent the original Form 212 to Farmers' regional office and put an agent's copy in Kim's file. The form indicates a cancellation of Kim's policy on the "81 Caprice" effective July 22, 1996 at 2:00 p.m. because the car "has been junked." The form also contains a line for the signature of the insured and the exact time and date of the signature. On the line designated for the signature of the insured, Cobillas wrote "by phone." Cobillas signed the form at 11:00 a.m.

During the deposition, when asked by Blanks's attorney if he were to buy insurance from Cobillas and ask him how to cancel the policy, what would Cobillas say, Cobillas responded that he would tell him that in order to cancel the policy, Blanks's attorney "would have to let us know when you want to cancel, the date, and that's it. The reason...." Subsequently, after reading the portion of the policy regarding cancellation, Cobillas stated that an insured also would need to provide in writing what the insured wanted to do. Cobillas then stated that, to the best of his recollection, he told Kim during the telephone conversation that Kim needed "to drop us

**1.** All statutory references are to RSMo. (2000), unless otherwise indicated.

a note stating that this is what you want." To Cobillas' knowledge, Kim never sent the written notice that Cobillas said he would have to send to cancel his policy.

In his deposition, Ford testified to the following. Ford was out of the office when Cobillas took the telephone call from Kim. Ford found the agent's copy of the Form 212 that Cobillas had put in Kim's file. A few days later, Ford recorded in a "lapse and cancellation" book that he kept for his records that Kim's policy had been cancelled on July 22 because Kim had sold the car. About a week later, Ford spoke with Kim over the telephone and Kim indicated that he "junked the car out" to a salvage yard. Ford received from the regional office an agent's copy of Farmers' Notice of Cancellation of Kim's policy. The notice indicated a cancellation date of July 22, 1996 and a mail date of August 2, 1996, a premium refund amount of $70.44, and Farmer's regional office address. The notice also indicated Kim as the named insured and included his address. On the notice, the following paragraph was "x'd" as applying:

> We have received a request to cancel your policy. Since we do not have your signed authorization, this will give you notice that your insurance is cancelled effective at 12:00 NOON . . . on the cancellation date shown.

Ford further testified that although apparently Kim's policy was canceled over the telephone, Ford generally never canceled a policy without a written request, except for relatives. Ford believed that Cobillas told Kim that he needed to send in a note and "he went ahead and done it and expected to get the note" but never did. Ford had no doubt that Kim intended to cancel the policy.

In its Judgment on November 19, 2001, the trial court found that Farmers did not receive written notice of cancellation and that Ford was not the agent of Kim and therefore that Farmers had liability coverage under the policy for the September 1, 1996 accident.[2] Consequently, the trial court found that Blanks should recover from Farmers her July 29, 1997 judgment in the amount of $100,000, plus costs and interest since July 29, 1997.

### Standard of Review

In a case tried on stipulated facts, the only issue on appeal is whether the trial court drew the proper legal conclusions from the stipulated facts. *State Farm Mut. Auto. Ins. Co. v. Sommers,* 954 S.W.2d 18, 19 (Mo.App. E.D.1997). The interpretation of the meaning of an insurance policy is a question of law. *Windsor Ins. Co. v. Lucas,* 24 S.W.3d 151, 153 (Mo. App. E.D.2000). When interpreting the language of an insurance policy, we give the language its plain meaning. *Devine v. Gateway Ins. Co.,* 60 S.W.3d 6, 9 (Mo.App. E.D.2001). Any doubt or uncertainty in the policy language must be resolved in favor of the insured. *Union Pacific R.R. Co. v. Am. Family Mut. Ins. Co.,* 987 S.W.2d 340, 344 (Mo.App. E.D.1998).

To cancel an insurance policy, strict compliance with all the notice requirements is a prerequisite, even when such requirements are unreasonable. *Safeco Ins. Co. of Am. v. Stone & Sons, Inc.,* 822 S.W.2d 565, 568 (Mo.App. E.D. 1992). This standard applies even if the insured attempts to effect a policy cancellation. *S & P Oyster Co., Inc. v. U.S. Fidelity and Guar. Co.,* 865 S.W.2d 379, 382 (Mo.App. E.D.1993). Requiring strict compliance enhances certainty in insurance matters, benefiting both insurers and in-

---

2. Since Kim paid the premium on the policy for a six-month period effective March 9, 1996, without cancellation, the policy would not have expired until September 9, 1996.

sureds. *Id.* A request for cancellation of a policy must be unequivocal and absolute. *Schroeder v. Horack,* 592 S.W.2d 742, 745 (Mo. banc 1979). The burden of proving cancellation of an insurance policy is on the party asserting it. *Gambill v. Cedar Fork Mut. Aid Soc'y,* 967 S.W.2d 310, 312 (Mo.App. S.D.1998).

### Discussion

In its point on appeal, Farmers argues that the trial court erred in not entering judgment for Farmers because Farmers received written notice from Kim that Kim was canceling the policy as a matter of law in that written notice forwarded by Kim's agent to Farmers was sufficient written notice under the policy.

■ We conclude that Kim did not strictly comply with the notice requirements for cancellation under the policy. The policy required Kim to advise Farmers in writing of his request for cancellation of the policy. Cobillas testified that he told Kim that Kim needed to send a writing to Farmers stating his intention to cancel the policy and that such a writing was not received. Kim was not a client of Cobillas. Kim did not give Cobillas authority to send written notice to Farmers on his behalf nor did Cobillas indicate to Kim that he would do so, as he told Kim that Kim needed to send a writing to Farmers stating his intention to cancel the policy.

■ Further, Kim's request for cancellation of the policy was not unequivocal and absolute. He did not send a writing to Farmers stating his intention to cancel the policy, as instructed by Cobillas. Also, as of the accident date, Kim had not sold or "junked" the car, which was apparently

the reason he gave for intending to cancel the policy, as the 1981 Caprice was the car that Kim was driving at the accident. Mere knowledge by one party to an insurance contract of the other party's intent and efforts to cancel the policy does not excuse the failure to comply strictly and literally with the contractual requirements for cancellation. *Safeco Ins. Co. of Am.,* 822 S.W.2d at 568.

Additionally, the policy does not provide for a waiver of the notice requirements for cancellation of the policy. On the contrary, regarding changes to the policy, the policy provides:

> This policy with the Declarations includes all agreements between you and us relating to this insurance. No other change or waiver may be effected in this policy except by endorsement, new Declarations or new policy issued by us.

Farmers cites the majority opinion in *Schroeder* to support its argument that the notice requirements for cancellation of the policy were met. However, *Schroeder* is distinguishable from this case. Unlike in *Schroeder,* 592 S.W.2d at 743, the parties did not stipulate to the contents of the telephone call between Kim and Cobillas. Kim is deceased so he cannot testify to any such conversation. Further, in *Schroeder,* although subsequent to the telephone call between the insured and his insurance company agent, the insured provided the insurance company with a written confirmation of cancellation of the policy on a "Renewal Questionnaire." *Id.* at 747. Farmers did not produce a cashed premium refund check to confirm Kim's cancellation of the policy. Further, both the Form 212 and the Notice of Cancellation submitted to the trial court are agent's copies, not regional office copies.[3]

3. The Form 212 has a box specified "for regional office use only" that includes a "re- ceived date" section that is blank.

The *Schroeder* court provided the following rationale for its conclusion:

> The average American citizen who has an automobile liability policy which he wants to cancel does so by calling the insurance agent and telling him to cancel his policy. He does not sit down and write the insurance company a letter stating when thereafter the cancellation is to be effective. He leaves that to the insurance agent and that is the way this matter was handled.

However, it does not appear that a formal letter was necessary to satisfy the notice requirements under this policy. The Form 212 contains a line for the signature of the insured and the exact time and date of the signature. Kim could have stopped by Cobillas and Ford's office to sign the Form 212 or Cobillas or Ford could have mailed the Form 212 to Kim to sign and to return in an enclosed stamped envelope.

Accordingly, we conclude that Farmers did not meet its burden of proving cancellation of the policy. Kim did not strictly comply with the notice requirements for cancellation under the policy and Kim's request for cancellation of the policy was not unequivocal and absolute. Therefore, the policy was in effect at the time of the accident.

### Conclusion

Because the trial court drew the proper legal conclusions from the stipulated facts, we affirm the Judgment of the trial court.

WILLIAM H. CRANDALL, JR., P.J., and GLENN A. NORTON, J., concur.