Darren K. **KEARNS**, Attorney at Law, P.C., Plaintiff–Appellant,

v.

**INTERLEX INSURANCE CO.,** Defendant–Respondent.

No. 27978.

Missouri Court of Appeals, Southern District, Division One.

Aug. 28, 2007.

Darren K. Kearns, Overland Park, KS, pro se.

Brian Dean Jenkins, Overland Park, KS, for respondent.

JEFFREY W. BATES, Judge.

Darren K. Kearns (Kearns) sued Interlex Insurance Company (Interlex) for breach of contract, vexatious penalties and punitive damages after the insurer refused to reimburse Kearns for attorneys' fees he voluntarily incurred, without Interlex's knowledge or consent, in responding to a bar complaint filed against Kearns by a former client. Following a bench trial, the trial court entered judgment in favor of Interlex. Kearns has raised seven points of error in his brief. To resolve this appeal, however, we need address only one. The trial court concluded, *inter alia,* that the Interlex policy provided no coverage because Kearns' legal fees did not constitute "damages" as defined by the policy. Kearns' fifth point challenges that ruling. Because we agree with the trial court that the Interlex policy provided no coverage for Kearns' voluntarily-incurred legal fees, we affirm the judgment.

## I. Standard of Review

In this court-tried case, our review is governed by Rule 84.13(d). *Mullin v. Silvercreek Condominium Owner's Ass'n, Inc.,* 195 S.W.3d 484, 489 (Mo.App.2006).[1] We must affirm the trial court's judgment unless it is not supported by substantial evidence, it is against the weight of the evidence, or it erroneously declares or applies the law. *Murphy v. Carron,* 536 S.W.2d 30, 32 (Mo. banc 1976); *Johnston v. Shoults,* 160 S.W.3d 440, 441 (Mo.App.

---

1. All references to rules are to Missouri Court Rules (2007).

2005). The trial court's judgment is presumed correct, and appellant has the burden of proving it erroneous. *Surrey Condominium Ass'n, Inc. v. Webb,* 163 S.W.3d 531, 535 (Mo.App.2005).

On appeal, this Court reviews the evidence and all reasonable inferences in the light most favorable to the judgment and disregards all contrary evidence and inferences. *City of Gainesville v. Morrison Fertilizer, Inc.,* 158 S.W.3d 872, 874 (Mo. App.2005). We defer to the trial judge's superior opportunity to assess the witnesses' credibility. *Harris v. Lynch,* 940 S.W.2d 42, 45 (Mo.App.1997). "Judging credibility and assigning weight to evidence and testimony are matters for the trial court, which is free to believe none, part, or all of the testimony of any witnesses." *Savannah Place, Ltd. v. Heidelberg,* 122 S.W.3d 74, 86 (Mo.App.2003). Our summary of the evidence presented at trial, which is set forth below, has been prepared in accordance with these principles.

## II. Factual and Procedural Background

Kearns, who is licensed in both Kansas and Missouri, practices law in Overland Park, Kansas. Interlex is a professional liability insurance company located in Springfield, Missouri. Interlex issued a claims-made policy to Kearns with a policy period from November 11, 2002 until November 11, 2003. Section I.A. contained the insuring agreement, which stated:

> The Company will pay all sums which any Insured becomes legally obligated to pay as damages resulting from a wrongful act committed by any Insured in the performance of Professional Services, if the claim is first made against an Insured and reported to the Company during the terms of this agreement or during the extended reporting period where applicable.

The policy defined the word "damages" to mean:

> [A] settlement, a monetary judgment or an award based upon or resulting from a claim for wrongful acts by the Insured in the performance of Professional Services. Damages does not include any return, reimbursement, withdrawal or reduction of fees charged by any Insured for Professional Services. Damages also does not include sanctions, fines, penalties, punitive or exemplary damages.

Section I.B. of the policy, which addressed Interlex's duty to defend, stated in relevant part:

> The Company has the right and will defend any claim brought against any Insured for which there is coverage. The defense costs which the Company incurs in defending any such claim are part of the limits of liability and will reduce the limits of liability available to pay damages....

The policy defined "defense costs" to mean:

> (1) fees and expenses charged by a lawyer, mediator or arbitrator retained by the Company or approved in writing by the Company to defend a covered claim;
>
> (2) all other fees, costs and expenses which are incurred by the Company and relate to the investigation and defense of a claim. Defense costs does not include salary charges of regular employees or officials of the Company or fees and expenses of independent adjustors.

Finally, the "conditions" set out in section V of the policy included the following cooperation clause:

> The Insured agrees to cooperate with and assist the Company in the investigation and defense of claims to the extent

the Company deems necessary, to include securing and giving evidence, obtaining the attendance of witnesses, and attending hearings and trials. The Insured shall not, except at the Insured's own expense, voluntarily make any payment, assume any obligation or incur any expense. If the Insured supplies false information to the Company, gives false testimony, or alters physical evidence or documents regarding a claim, or fails to cooperate with the Company in the defense of said claim, all coverage under this agreement will be forfeited.

In August of 2002, Linda Bartels (Bartels) hired Kearns to set up a guardianship and special needs trust for Bartels' disabled son. When Kearns did not complete the work in a timely manner, Bartels discharged him and retained new counsel.

On March 19, 2003, Bartels filed a bar complaint against Kearns with the Kansas Disciplinary Administrator (KDA). On March 21, 2003, Kearns wrote a letter to KDA and described Bartels' complaint as a "cryptic dishonest chronology of facts." Kearns suggested that the complaint was motivated by Bartels' desire to have someone else pay for her own failure to comply with her responsibilities. Because Bartels worked as a registered nurse in Kansas, Kearns also wrote a separate letter that same day to the Kansas State Board of Nursing (KSBN). In Kearns' complaint to KSBN, he stated that Bartels had fraudulently attacked him in a "dishonest and disingenuous letter sent to the Kansas Disciplinary Administrator." Kearns asserted that Bartels lacked the character, integrity and credibility necessary to practice as a registered nurse. On March 25, 2003, KDA referred Bartels' complaint to a local bar committee to commence an investigation. On March 27, 2003, Bartels wrote a second letter to the KDA and enclosed a copy of Kearns' complaint against her to

KSBN. Bartels expressed her disappointment that Kearns was engaging in personal attacks and appeared to want to harm her professionally. She also denied that her complaint had any financial motivation: "Mr. Kearns was paid in full per his invoice dated November 08, 2003 (attached). No discount was requested and no financial request has been made since." On April 4, 2003, Kearns wrote a second letter to KSBN in further support of his complaint against Bartels. In this letter, Kearns claimed that Bartels' only concern was to "make mischief for [Kearns] and occasion unwarranted time and trouble because of her malicious nature." Once again, Kearns asserted that such behavior could affect the care Bartels provided to her patients. On April 5, 2003, Bartels forwarded this letter to KDA. Kearns did not give Interlex notice that any of the foregoing events had occurred.

On June 1, 2003, without consulting or seeking prior approval from Interlex, Kearns hired attorney Richard F. Stevenson (Stevenson) at a rate of $200 per hour to represent Kearns regarding Bartels' KDA complaint. On June 30, 2003, a KDA investigator issued a confidential Investigative Report concerning Bartels' complaint. The investigator found that Kearns' pre-complaint conduct did not support a violation of the rules of professional conduct, but that Kearns' complaint to KSBN "was made for the sole purpose of retaliation against [Bartels] for her complaint to [KDA]." Given the "retaliatory nature" of Kearns' letters to KSBN, the investigator concluded that Kearns' post-complaint behavior adversely reflected upon his fitness to practice law. On August 21, 2003, KDA notified Kearns via letter that there was probable cause to believe he had violated the Kansas Rules of Professional Conduct. Kearns was offered the option of accepting an informal admonition as discipline or requesting a

formal hearing before the KDA. Stevenson advised Kearns to accept the informal admonition. Kearns declined to do so and discharged Stevenson. Kearns paid Stevenson approximately $2,800 in legal fees for his representation relating to the bar complaint.

Around September 1, 2003, Kearns hired attorney John Ambrosio (Ambrosio) to replace Stevenson. Ambrosio charged $250 per hour to represent Kearns on his bar complaint. Once again, Kearns hired legal counsel to represent him on the disciplinary matter without Interlex's knowledge or consent.

On October 24, 2003, Kearns called Rebecca Myers (Myers), an Interlex claims specialist, and orally reported for the first time that an ethics complaint had been filed against him by Bartels. Kearns reported that the disciplinary process was ongoing, but he did not ask Interlex to provide him with a defense as to that matter. He acknowledged that no one was making a claim against him; instead, he was the one making the claim under his own policy. He wanted to be reimbursed by Interlex for $4,000 in legal fees he had paid to Stevenson and Ambrosio for their representation relating to the complaint. Neither attorney was on the list of attorneys with legal malpractice expertise who were approved to represent Interlex's insureds. Moreover, Interlex was able to hire lawyers on the approved list at an hourly rate of between $115 to $135. During the telephone call, Myers asked Kearns to fax any pertinent documents to her. Kearns faxed a copy of Bartels' complaint, Kearns' response, the KDA's letters to Kearns and the June 2003 Investigative Report to Myers.

On October 30, 2003, Myers sent Kearns a letter denying coverage for the following reasons:

> [Y]our policy with Interlex does not provide coverage for fees incurred in a matter of this type. Further, if there were coverage under your policy for Ms. Bartels' Bar Complaint, it would have been voided by your failure to report this to Interlex and your actions in hiring counsel without giving Interlex the opportunity to control the defense of the matter. Further excluding any liability for the attorneys' fees you have incurred is the cooperation clause in your policy that sets forth that "The Insured shall not, except at the Insured's own expense, voluntarily make any payment, assume any obligation or incur any expense." Your hiring of counsel in this matter would fall within that policy provision.

Thereafter, Kearns and Myers exchanged additional correspondence discussing the coverage issue. Myers consistently denied that Interlex provided coverage for attorneys' fees voluntarily paid by Kearns without Interlex's knowledge and consent.

In February 2004, Ambrosio negotiated a six-month diversion agreement between Kearns and KDA. Based upon that agreement, the disciplinary case against Kearns would be dismissed upon successful completion of the terms and conditions of the diversion.[2] The disciplinary process did not result in Bartels receiving any settlement, money judgment or award based on Kearns' conduct. Kearns paid Ambrosio approximately $2,700 in legal fees for his representation relating to the bar complaint.

On April 28, 2004, Kearns filed a four-count petition against Interlex. Count I alleged a breach of contract by Interlex

---

**2.** The diversion was successful, and the disciplinary case against Kearns was dismissed in August 2004.

because: (1) Kearns had paid $6,275.20 in attorneys' fees defending against a bar complaint; and (2) that payment constituted defense costs that were covered by his policy. Count II alleged a claim for vexatious refusal to pay pursuant to § 375.420 RSMo (2000). Count III asserted a bad faith claim against Interlex. Count IV sought $6,275.20 in punitive damages.

In August 2006, the case was tried to the court. Kearns and Myers both testified, and numerous documentary exhibits were admitted. After considering the evidence, the court entered judgment for Interlex. With respect to the breach of contract count, the court ruled that: (1) Kearns never presented a "claim" to Interlex as defined by the policy; (2) even if the original bar complaint constituted a claim, Interlex was not timely notified of the complaint and was prejudiced by the delay; (3) Kearns failed to provide cooperation to Interlex as defined in the policy; (4) assuming that Kearns presented a "claim" and sustained "damages," there was no coverage because they resulted from Kearns' intentional act of filing a complaint against Bartels with the KSBN; and (5) the "damages" sought by Kearns were not damages covered by the policy language. Because the court found no breach of contract by Interlex, Kearns' requests for vexatious penalties and punitive damages were denied.[3] This appeal followed.

### III. Discussion and Decision

Kearns presents seven points on appeal. The first five points challenge the trial court's rulings on the breach of contract count. The sixth and seventh points challenge the court's failure to award vexatious penalties or punitive damages. We need only address one point, however, because

the issue presented therein is dispositive of the entire appeal.

 In Kearns' fifth point, he contends that the legal fees he voluntarily incurred in responding to Bartels' bar complaint are defense costs that are covered by the Interlex policy. As the insured, it was Kearns' burden to prove coverage under his policy. *See Christian v. Progressive Cas. Ins., Co.,* 57 S.W.3d 400, 403 (Mo.App.2001). The interpretation of an insurance policy is a question of law. *Blanks v. Farmers Ins. Co., Inc.,* 97 S.W.3d 1, 4 (Mo.App.2002). The language used in the insurance contract is given its plain and ordinary meaning. *Shahan v. Shahan,* 988 S.W.2d 529, 535 (Mo. banc 1999); *Missouri Employers Mut. Ins. Co. v. Nichols,* 149 S.W.3d 617, 625 (Mo.App. 2004); *East Attucks Community Housing, Inc. v. Old Republic Sur. Co.,* 114 S.W.3d 311, 319 (Mo.App.2003).

 Insofar as pertinent here, the insuring agreement in the Interlex policy stated that the company would pay "all sums which any Insured becomes legally obligated to pay as damages...." The word "damages" was defined by the policy to mean "a settlement, a monetary judgment or an award based upon or resulting from a claim for wrongful acts by the Insured in the performance of Professional Services." It is undisputed that Bartels' bar complaint never resulted in settlement, judgment or award to her resulting from Kearns' failure to timely complete his work. Accordingly, the legal fees that Kearns voluntarily incurred in responding to the bar complaint do not constitute "damages" as defined by the plain language of the policy. In an attempt to avoid this obvious conclusion, Kearns argues that his legal fees are covered by the

---

**3.** *Kearns voluntarily dismissed Count III pri-* or to the presentation of evidence.

policy as defense costs. This argument fails for two reasons.

First, § I.B. of the policy stated that "[t]he defense costs which the Company incurs in defending any such claim are part of the limits of liability and will reduce the limits of liability available to pay damages." However, the phrase "defense costs" was defined to mean "fees and expenses charged by a lawyer, mediator or arbitrator retained by the Company or approved in writing by the Company to defend a covered claim...." It is undisputed that Interlex did not retain Stevenson or Ambrosio; neither did the company give Kearns written approval to do so. Therefore, Kearns' legal fees do not constitute "defense costs" that are covered by his policy.

 Second, one of the grounds for Interlex's denial of coverage for Kearns' legal fees was his breach of the policy's cooperation clause. "A cooperation clause in an insurance policy is a condition subsequent which necessitates proof by the insurer of facts sufficient to relieve it of liability." *Hayes v. United Fire & Cas. Co.*, 3 S.W.3d 853, 857 (Mo.App.1999). Such clauses are valid and enforceable in Missouri. *Riffe v. Peeler*, 684 S.W.2d 539, 542 (Mo.App.1984). In order to be relieved of liability, however, the insurer must prove that it was prejudiced by the insured's breach. *East Attucks*, 114 S.W.3d at 326. In pertinent part, the cooperation clause in the Interlex policy stated that "[t]he Insured shall not, except at the Insured's own expense, voluntarily make any payment, assume any obligation or incur any expense." The trial court was presented with evidence that Kearns breached this condition subsequent by voluntarily incurring legal fees without Interlex's knowledge and consent. Additional-

ly, there was evidence that Kearns' actions prejudiced the insurer. The attorneys hired by Kearns were not on Interlex's approved list, and they charged $200 to $250 per hour for their work. Had Interlex secured counsel for Kearns, the insurer could have done so at a far lower hourly rate of between $115 and $135 per hour. Therefore, Interlex proved a material breach of the cooperation clause and prejudice resulting from the breach. Point V is denied.[4]

Given our disposition of Kearns' fifth point, the remaining issues presented by his other six points on appeal are moot. The judgment of the trial court is affirmed.

PARRISH, P.J., and SCOTT, J., concur.

---

4. Kearns' motion for attorneys' fees on appeal is denied.